262 S.W.2d 312 (1953)
SWAN
v.
SWAN.
Nos. 28659, 28749.
St. Louis Court of Appeals. Missouri.
November 17, 1953.
Harold O. Piening and Hay & Flanagan, St. Louis, for appellant.
Morris A. Shenker, St. Louis, for respondent.
ADAMS, Special Judge.
Plaintiff mother seeks modification of divorce decree awarding custody of minor child to paternal grandfather. From an order modifying the decree and granting the mother general custody with temporary custody in defendant father on weekends and for six weeks during summer vacation the father appeals.
*313 On October 22, 1944, plaintiff mother, Bernyce Marie Swan, was granted a divorce from defendant father, Benjamin Daniel Swan. Custody of minor child of the parties, Daniel Hugh Swan, eleven years old at the date of the hearing below, was awarded to the paternal grandfather, Benjamin Daniel Swan, Sr.
The father makes no claim that the mother is not a fit and proper person to have custody of the child. The evidence abundantly justifies his failure to assert otherwise. He does contend that no changed conditions were shown justifying the modification of the decree. It will, therefore, be necessary only to state such facts as bear on the relative conditions existing at the time of the hearing herein and those at the time of the divorce decree.
When the divorce case was heard the mother was not receiving any support from the father; was employed and living in a single room in a rooming house. The father and child were living with the child's paternal grandparents. Because of such conditions the mother requested that custody of the child be awarded to the grandfather.
On July 15, 1946, the mother married one Norman Weihe. He is employed as a collector and service man by his brother-in-law Ben McCall in the operation of the McCall Novelty Company which handles pin ball machines and coin phonographs; he also does cabinet work in his spare time. His income is approximately $300 per month. He is willing for the child to live in his home and can and will support him. The mother is not employed and devotes full time to her duties as a housewife.
The houses of the grandfather and the mother are comparable in size, furnishings and facilities, except that in the former the child shares a room with his father when he is in town and sometimes with an uncle when the father is out of town. In the latter he has a room of his own. The mother's home is located on a fifteen and a half acre tract in the neighborhood of Chesterfield, Missouri. The grandfather's is in Webster Groves. He owns his home for which he paid $14,500 and has approximately $10,000 indebtedness against it. The mother's residence was built by Weihe on land owned by McCall on which the Weihes have a ten-year lease. McCall has executed a note in favor of them for $10,000 due in 7 years, presumably to cover the cost of the house.
The father owns two motor tractors which are leased to transport companies, one of which he operates himself on the road taking him away from home some four to six days each week; his net income for 1951 was "between $5,000.00 and $6,000.00".
The grandfather is employed as Unit Supervisor in the Credit Department of the Mercantile Trust Company and in 1951 earned $2,600.00, $1,100.00 of which was for approximately three months from his present employment. He lives with his wife, the natural paternal grandmother, who operates his household.
Educational facilities of the neighborhoods of both homes are comparable and the child attends the same church and Sunday school when at either home.
Ben McCall and his wife, the mother's sister, live about one hundred feet from her home; he is tubercular but occupies separate quarters to himself when he is not in a hospital. The child visits in the McCall home frequently, but never has any contact with McCall.
The record does not show the original decree of divorce, but the mother's motion, as well as the father's answer, states that the decree awarded the custody of the child to the grandfather, apparently with no right of visitation nor temporary custody in the mother or the father. Nevertheless the grandfather has permitted the mother to have the child with her on each weekend and during all of the summers since the divorce.
The grandfather has furnished the child with the necessary clothing, food, medical care and other personal effects for his subsistence during the times when the child has *314 been with him. The mother has furnished the child with the same necessaries and personal effects during the times when the child has been with her and in addition has bought a horse and a dog for him. She and her present husband also bought him a 410-gauge shotgun which he uses only when Weihe is with him on hunting trips.
At the time of the hearing below the child was in his second year in school in Webster Groves and has cultivated quite a few friends at the school and in his neighborhood.
On this appeal we are required to "review the case upon both the law and the evidence" and arrive at our own conclusions as to what disposition of the child's custody will be to its best welfare; "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses" and his "judgment shall not be set aside unless clearly erroneous," Subsection 4, Section 510.310 RSMo 1949, V.A.M.S., and in conflict with a clear preponderance of the evidence disclosing a manifest abuse of judicial discretion. Rex v. Rex, Mo.App., 217 S.W.2d 391, 393-394; Armstrong v. Armstrong, Mo.App., 185 S.W.2d 845, 847; Hawkins v. Hawkins, Mo.App., 250 S.W.2d 817, 819.
It is right that this deference be accorded the trial judge, especially where, as here, the witnesses' appearance and conduct, their expressions and the impressions they leave, are so very important in determining with whom the child's best welfare dictates that its custody should be placed. He is in a far better position than We are, with only the transcript before us, to judge the qualifications of the parties.
On the other hand, if after reviewing all the evidence and giving proper deference to the findings of the trial court, we are of the opinion that his conclusions do not result to the best welfare of the child, then we are obliged to substitute our judgment for his.
In Weir v. Marley, 99 Mo. 484, loc.cit. 494, 12 S.W. 798, 800, 6 L.R.A. 672, our Supreme Court said:
"In all civilized countries in which the family is regarded as the unit of social organization, its minor members must and ought to be subject to the custody and control of those who are immediately responsible for their being; for the reason that by nature there has been implanted in the human heart those seeds of parental and filial affection that will assure to the infant care and protection in the years of its helplessness, to be returned to the parents again when they in their turn may need protection in their years of helplessness, and of their child's strength and maturity. The law at the birth of an infant imposes upon the parent the duty of such care and protection, to the performance of which the instincts of nature so readily prompts, and clothes him with the right of custody that he may perform it effectually, upon the presumption that such custody, being in harmony with nature, is best for the interest, not only of the parent and child, but also of society. Conceding, however, that the primary object is the interest of the child, the presumption of the law is that its interest is to be in the custody of its parent."
This law of nature is the foundation for the rule which has been consistently followed that "under our law a parent has a natural right to the custody of his minor child, a right which public policy demands shall be held inviolate, and which, in a contest between the parent and some third person, is not to be denied the parent unless it is made manifest to the court that the parent, for some strong and cogent reason, is unfit or incompetent to have his child, so that the welfare of the child itself demands a different disposition." Ex parte De Castro, 238 Mo.App. 1011, 190 S.W.2d 949, 959; Cox v. Carapella, Mo.App., 246 S.W.2d 513, 514, 515; State ex rel. White v. Swink, Mo.App., 256 S.W.2d 825, 829.
Therefore, if the evidence shows a change of conditions indicating that a modification of the decree would be beneficial to the child, giving proper consideration to *315 the award made in the original divorce decree, and if the evidence does not disclose a strong and cogent reason showing the mother to be unfit or some special or extraordinary reason why she should not have custody, then the judgment below should be affirmed.
There is no contention made by the father that the mother is unfit nor, with the possible exception of the tubercular condition of McCall, is any special or extraordinary reason shown why she should not have custody. Neither the child nor any of McCal's own children ever have any contact with him and we do not believe that under the circumstances the child will be unnecessarily exposed to this disease.
Since the mother is a fit person and there are no special or extraordinary reasons why she should not have the custody, have conditions materially changed? We think they have.
At the time of the divorce the mother was without means of support other than her own employment and was living in a single room with neither the time nor the facilities to properly care for the child, and it is to her credit that she was unselfish enough to request that the child be placed in the excellent home available for it at its grandfather's. She did not abandon nor neglect the child once the custody award was made, but instead kept in constant and frequent contact with him on each weekend and during the summers. She has remarried and now has a good home where the child can receive all of the necessaries of life and more. She is not working and, unlike the father or the grandfather, will be able to devote her entire time to the care and attention of the child.
Even if the grandfather continues to permit visitation between mother and child as in the past, much of the time that the child would be with the mother would overlap the time that the father was at home. The child's association with either of its parents would be only two or three days per week. Under the decree as modified the maximum association by the child with both of its parents is assured inasmuch as the father will have the child on weekends and the mother during the week while the father is out of town.
Counsel for the father asserts that a change of condition of the mother is not a change of condition of the child and consequently should not be considered. We disagree. Certainly a change in the mother's condition which now enables her to give the child the full love, affection, care and training of a natural mother is a change of condition of the child.
Under the decree as modified the child will not be subjected to an uprooting, nor subjected to a new routine and different standards of home life as asserted by counsel for the father. Throughout the years since the divorce the child has been transferred weekly between these two homes and has become as accustomed to one as the other.
We have read all of the cases cited by the father and those which in the general language of the opinion appear to support his position are distinguishable on the facts, either because they involve controversies between the two natural parents in which case the right to custody is equal, rendering inapplicable the rule announced Ex parte De Castro, 238 Mo.App. 1011, 190 S.W.2d 949, 959; or the natural parent seeking modification is either shown to be unfit to have custody or some special or extraordinary reason existed making it unwise to modify the decree.
We are not unmindful of the rule announced by a line of cases including Dawson v. Dawson, Mo.App., 241 S.W.2d 745; Drew v. Drew, Mo.App., 186 S.W.2d 858; and Ruedlinger v. Ruedlinger, 222 Mo.App. 819, 10 S.W.2d 324, that where in an unappealed decree awarding custody of a child to one or more of its grandparents the presumption that its custody should be in the parent no longer prevails, but that a contrary presumption should be indulged until proof of change of circumstances is made satisfying the court that the best interest *316 of the child demands that its custody be changed. However, this latter presumption does not destroy and remove from our consideration the rule announced in Ex parte De Castro, supra, and the presumption should give way in the light of a showing of the fitness of the parent where, as here, the conditions of the parent seeking custody have materially changed since the original decree.
The judgment modifying the decree is affirmed.
BENNICK, P. J., and ANDERSON, J., concur.