**MORRIS et al. v. McGREGOR et ux.**

No. 7218.

Springfield Court of Appeals.

Missouri.

June 14, 1954.

Boaz B. Watkins and Gillette F. Wright, St. Louis, for appellant.

Claude F. Cooper, Blytheville, Ark., Bradley & Noble, Kennett, for respondents.

McDOWELL, Presiding Judge.

This appeal is from a judgment of the Juvenile Division of the Circuit Court of Dunklin County, Missouri, denying appellants' application for custody of their three minor children.

Leroy Morris and Kathryn Morris are the parents of Leroy David, William Cullen and Linda Sue Morris, minors. In the latter part of 1951 these children were adjudicated neglected children by the Magistrate Court of Pemiscot County, Missouri, and, by the court, placed in homes.

In 1952 plaintiffs-appellants filed a petition in the Magistrate Court of Pemiscot County praying that the court order custody and care of Leroy David, William Cullen and Linda Sue, minors, be transferred and vested in appellants.

On October 27, 1952, a trial was had in the Magistrate Court and judgment entered denying the petition. Appellants appealed to the Circuit Court of Pemiscot County. A change of venue was taken from that court and the cause was transferred to the Juvenile Division of the Circuit Court of Dunklin County, where it was tried February 4th, 1953, resulting in a judgment denying custody of said children to petitioners.

The judgment, as shown by the record, reads as follows:

"The Court: Evidence heard and testimony adduced to restore custody of the 3 minor children to their natural parents; legal care and custody of Leroy David Morris and William Cullen Morris is hereby vested and placed in Mr. and Mrs. R. M. Tidwell. Petition and motion of petitioners for care and custody is denied. * * * Care and custody of Linda Sue Morris continued in Mr. and Mrs. Edward McGregor."

On February 13, 1953, motion for new trial was filed and a motion to modify the judgment. These motions were overruled April 27, 1953, and petitioners appealed.

The evidence in this case is so confusing that it is almost impossible for the court to determine from the record just what the proof does show. The argument before the court by counsel for both appellants and

respondents was admittedly outside the record. The evidence offered is as follows:

The appellants were married in the state of New Jersey in 1944. New Jersey was the home of the mother who was married at the age of 16. The husband was born in Illinois but most of his life was spent in Pemiscot County, Missouri. For the last seven or eight years his occupation has been that of electrician; he spent seventeen months in the Army, farmed in Pemiscot County, and worked in St. Louis and New Jersey as an electrician.

The family seems to have had no trouble prior to the year 1949, but, since that time, they have been separated three times. For more than a year, however, prior to this action they have been living together in St. Louis in a two-room, downstairs furnished apartment, at 3709 North Ninth Street, paying about $15 a week rent. The husband has been continuously employed for more than a year at the Pullman Shops at a salary of $80.12 a week.

The testimony is very limited as to the home of appellants and their ability to take care of these minor children. There was an investigation by the Welfare Agency in St. Louis as to the ability of these parents to care for their children and a report submitted but the court refused the evidence as hearsay. However, it was shown that this report did disclose that these parents are now competent and able to take care of their children but that testimony is not now before us, having been ruled out by the trial court.

Upon application of appellants one of their four children, a boy, was returned to them, prior to this action, and, since this appeal, the two minor boys mentioned in the petition have been returned to appellants by order of the Circuit Court of Dunklin County and it seems that only Linda Sue, a girl of the age of two, is in question. She was placed in the custody of the respondents herein, where she now is and there is no question that the home selected by the Welfare Department is a good one.

The testimony, as best as we can determine, shows that appellants' home has been in St. Louis since August, 1950, where Mr. Morris has been working as an electrician for the Pullman Company and Mrs. Morris was employed at an ice cream company. It seems that in August, 1951, Morris was laid off from his work and went to New Jersey, where his brother lived, to seek work in Dupont's factories; that he worked in New Jersey about five or six weeks and returned to St. Louis sometime in October. During Mr. Morris' absence, his wife continued work in St. Louis and kept the minor children with her. The testimony shows that Mrs. Morris lost her job and, being unable to care for her children, took them to Caruthersville, Pemiscot County, and placed them in a home of a Mrs. Woods; she says she left them with Mrs. Woods' daughter, who lived in the same house but it seems that Mrs. Woods, the mother, took care of the children and the children's mother paid her $20 a week for their care. Because of her work she was unable to visit the children but did pay for their keep. The evidence shows that upon the return of Mr. Morris from New Jersey he was alienated from his wife's affections by some stories told to him by the enemies of his wife and they separated. However, Mr. Morris went to Caruthersville to see about his children and, upon the advice of the Welfare Agent, accompanied her to the Magistrate's Court and consented that the children be adjudged neglected and made wards of the court.

Some time in 1952, after the children had been made wards of the court, appellants went to Caruthersville and took custody of their children without the consent of the court and took them back to their home in St. Louis and kept them for about two weeks. They were arrested for kidnapping and fined by the court. It seems that it was after this affair that the Magistrate Court turned the oldest boy, Donald, back to the parents. The other children were placed in the custody of families by the Magistrate Court.

Appellants' testimony is that at the time they took their children, said children were

still in the Woods' home where they were placed by the mother and that said family had been paid continuously by the parents for their keep. The mother states she knew nothing of her husband's actions in having the children adjudicated as neglected children until after she was arrested.

The evidence shows that in 1949 the appellants were living in Caruthersville; the husband working at the shoe factory; possibly both working there; that they had some kind of trouble; that after this fuss the mother says she was informed that her husband had secured a divorce from her; that she was shown a newspaper where a divorce had been granted against some woman having the same name as appellant; that she was all torn up about the matter and went up town in Caruthersville and, while there, saw a bus leaving for St. Louis and took it; that she went to the home of a friend whom she had known in New Jersey and stayed all night; that this friend had to work some place and she asked to be dropped off uptown so she could go to a show, but instead she went to a restaurant and there met a young soldier; that while telling her troubles to several people in the restaurant, this soldier invited her to go to Washington with him, which she did and she was married to the soldier in Washington July 12; that she lived with him until the first of August, when she returned to Missouri, staying all night in St. Louis, and then going on to Caruthersville. She stated she learned from her husband some three or four months after her return, while in the state of Mississippi, that she was mistaken as to the divorce. She testified she was advised in Mississippi to return to Missouri and get the matter straightened out; that she afterwards met the Mrs. Morris who was divorced and had the same name as she.

The attorneys for the respondents made quite an argument outside of the record that Linda Sue was not the daughter of appellant, Mr. Morris. This was denied by both appellants. There never has been a divorce secured from the soldier.

The testimony is so incomplete as to the married life of these parties, their present condition and ability to care for their children, and their moral fitness to have them, that this court cannot pass upon the issues involved. It is true that the testimony shows these parties were married in New Jersey in 1944, and some testimony is shown as to them being in other states. It is hinted that some time in the last of 1949 or 1950, Mrs. Morris lived in the state of Mississippi and that Linda Sue was born there but, actually, there is no evidence excepting what was stated by the attorneys.

We are not informed why these parents would be trusted with three of their children, one turned over by the Magistrate Court and two turned over by the Circuit Court, and be denied the custody of the youngest child, Linda Sue. Possibly, the trial court heard and considered arguments outside the record concerning the question of Linda Sue's parentage.

Appellants' first assignment of error complains that the trial court erred in refusing to restore custody of said children to the parents and under point I of the brief state that the natural rights of the parents should not be denied unless it is made manifest to the court that the parents, for some strong and cogent reason, are unfit or incompetent to take charge of their children or unless the welfare of the children for some specific or extraordinary reason demands different disposition of the children.

Under this contention appellants cite Wilson v. Wilson, Mo.App., 260 S.W. 2d 770.

This was an action where the mother of the minor child sought to modify a divorce decree awarding custody of the child. In this case the court held that it became its duty to review the whole record as in cases of an equitable nature and decide the case on its merits, according to the interest of the child, having in mind a proper deference to the findings of the trial court on

disputed questions of fact where matters of credibility of the witnesses are involved. On page 776 of 260 S.W.2d of the opinion the court made this statement as to the law:

"A parent's claim to custody, absent unfitness, must prevail over the claims of grandparents. Because the Kansas City Court of Appeals failed to give effect to the presumption 'that the best interest of the child was to be in the custody of the parent,' its opinion was quashed by the Supreme Court in State ex rel. Crockett v. Ellison, 271 Mo. 416, 196 S.W. 1140. See also In re Scarritt, 76 Mo. 565 and Weir v. Marley, 99 Mo. 484, 12 S.W. 798, 6 L.R.A. 672.

" 'In the absence of evidence to the contrary, the law presumes that the child's welfare will best be served by committing it to the custody of one or the other of its parents. The parents' right by nature and by law, to the custody of children, should never be denied, except for the most cogent reasons, and unless it is clearly shown that both the parents are unqualified.' 27 C.J.S., Divorce, § 308c, page 1169.

"In Williams v. Williams, 240 Mo.App. 336, 342, 205 S.W.2d 949, 953, Judge Dew said: '* * * as against the world a parent has the primary right to the custody of his child, and * * * he is presumed to be fit and qualified for that natural privilege.' See Cox v. Carapella, Mo.App., 246 S.W.2d 513.

"The law presumes, until otherwise shown, that it is to the best interest of a child to be in the custody of his or her parent. Vance v. Vance, Mo.App., 203 S.W.2d 899, 901 (wherein this court reversed a judgment that plaintiff, father, an injured and innocent person, who was entitled to a divorce, was not a fit person to have custody of a child and ordered custody granted to him, rather than to maternal grandparents)." See authorities cited in this case. Stricklin v. Richters, Mo.App., 256 S.W.2d 53.

In Hyman v. Stanley, Mo.App., 257 S.W. 2d 388, 391, this court stated the law as follows:

"The judgment of the trial court finding Woodrow Hyman, Jr. a neglected child and placing the custody with respondents did not deprive appellants of the custody of their child permanently. Appellants could have regained the custody of this child by showing to the court their ability to properly care for and maintain it. The custody of the court continues until the parental care and support has been resumed by appellants. There is nothing in the judgment that would preclude the repentance and reacquisition of parental rights.

"In Application of Graham, supra, the law is stated, [239 Mo.App. 1036] 199 S.W.2d [68] on page 74, thus: '* * * "Abandonment continues until parental care and support are resumed, and it does not follow that the purpose to forego all parental duties may not be repented of, and in a proper case all parental rights again acquired". 2 C.J.S., Adoption of Children, § 21 (2), pages 388, 389. * * *'"

■ We agree with appellants that the natural rights of parents to custody of their minor child should not be denied unless it is made manifest to the court that the parent, for some strong and cogent reason, is unfit or incompetent to have such child or unless the welfare of the child itself demands a different disposition of the child at the hands of the court.

■ The law is that when a child is declared a neglected child, as in the case at bar, where the child in question was declared neglected and, by the court, placed in the custody of respondents, the McGregors, the parents were not deprived of such child permanently. Appellants, under the law, can regain the custody of this child by showing to the court their ability and fitness to properly care for and maintain it. The custody of the court continues until the parental care and support has been resumed by appellants.

■ Appellants' claim to custody, absent unfitness, must prevail over the claims of

respondents. In the absence of evidence to the contrary, the law presumes that the child's welfare will best be served by committing its custody to the parents. That right should never be denied, except for the most cogent reasons, and unless it is clearly shown that both the parents are unqualified. See authorities above cited.

We think the law is well stated in Williams v. Williams, 240 Mo.App. 336, 205 S.W.2d 949, 953, as follows:

" * * * as against the world a parent has the primary right to the custody of his child, and that he is presumed to be fit and qualified for that natural privilege. * * * "

In respondents' brief it is stated that the appellate court made inquiry of counsel at the time of oral argument of this case as to what they thought about the possibility of remanding the cause for a new trial in order that the subject of the suitableness of the home of petitioners for Linda Sue be further shown and that the development of the question as to whether Leroy Morris, the petitioner, is the father of Linda Sue be further developed. Both parties agreed that this case should be retried.

 Under the testimony, as shown in the record, this court is of the opinion that the trial court was not in possession of sufficient facts to find that the parents should be deprived of their children because of their unfitness and inability to care for same. The appellants should not be deprived of the custody of their children merely because the home in which the child was placed by the Magistrate Court, is a suitable one and because respondents are capable and able to take care of the child. It is no justification to say that appellants were not entitled to their child because they are poor people. That does not supply sufficient reasons to deprive appellants of their child. The record is so incomplete and in such bad condition that we believe it wise to remand the cause to the trial court for retrial so that the matter of fitness and capability of the parents to care for their children may be further developed.

Cause reversed and remanded.

BLAIR and STONE, JJ., concur.