290 S.W.2d 408 (1956)
In the Matter of Emmitt Ray SLAUGHTER a Minor.
Petition for Adoption by Christian J. SWEARY, Sr., and Harriett H. Sweary, husband and wife, Petitioners-Respondents,
v.
Emigen Bearbower Slaughter KRULL, Cross-Petitioner-Appellant.
No. 7479.
Springfield Court of Appeals. Missouri.
May 9, 1956.
*409 William E. Seay, Salem, for appellant.
Wayne W. Waldo, Waynesville, for respondents.
McDOWELL, Presiding Judge.
This appeal is from a decree of adoption rendered by the Juvenile Division of the Circuit Court of Pulaski County, Missouri, on the petition of Christian J. Sweary, Sr. and Harriett H. Sweary, husband and wife, to adopt Emmitt Ray Slaughter, a minor of the age of 13 years. The court decreed the adoption as prayed for and defendant, Emigen Bearbower Slaughter Krull, the child's mother, appealed.
The amended petition inter alia alleged that Emmitt Ray Slaughter was declared a neglected and dependent child in the Juvenile Division of the Circuit Court of Dent County, Missouri, on the 20th day of May, 1949, and made a ward of the court under the supervision of the State Health and Welfare Agency; that the parents, Norman Madison Slaughter and Emigen Slaughter wilfully abandoned said minor and wilfully neglected to provide said minor with proper care and maintenance for a period of more than one year next before the filing of adoption petition; that petitioners have had actual custody of the child since June, 1953.
The prayer is for adoption and change of name to Sweary.
Emigen Bearbower Slaughter filed answer to the amended petition in which she denied that the child had been declared a neglected child by the Juvenile Division of the Circuit Court of Dent County and made a ward of the court and specifically denied that she had wilfully abandoned said child and wilfully neglected to provide him with proper care and maintenance for *410 a period of one year before the filing of the adoption petition. She asked the court to deny petitioners request for adoption.
She filed a cross-petition alleging that Emmitt Ray Slaughter was born August 16, 1941, and that Norman Madison Slaughter was his father; that because of the financial and physical inability to care for said child and marital trouble she voluntarily gave up custody; that she diligently attempted to keep in contact with said minor during the time she did not have custody but that her efforts to contact him were thwarted; that she is presently physically and financially able to care for and maintain said minor and wishes to have legal custody and care restored to her.
The court entered a decree April 15, 1955, finding that the allegations of the petition were true and that plaintiffs were entitled to a decree of adoption.
The only assignment of error is:
"In an adoption proceeding the natural parent is entitled to custody, proof being absent that she is morally unfit or physically and financially unable to care for and maintain the child or abandoned child."
It is the duty of the court to review the whole record as in cases of an equitable nature and reach our own conclusion on both the law and the facts giving due deference to the findings of the trial court as to the weight and value of the testimony. In re Adoption of Forshey's Minor Children, 240 Mo.App. 1089, 225 S.W.2d 816; Wilson v. Wilson, Mo.App., 260 S.W.2d 770.
The evidence is that defendant, Emigen Slaughter Krull, was married to Norman Slaughter in 1940 in Dent County; that there were born to the marriage three children of which Emmitt Ray Slaughter is the eldest, now 13 years of age; that the parents had marital difficulties and after about ten years were divorced; that prior to the divorce they were separated and the children were placed with defendant's parents, which arrangement proved to be unsatisfactory, and, under the advice of her father, defendant turned the two boys over to the Welfare Department, and, on May 20, 1949, Emmitt Ray Slaughter was adjudicated a neglected child in the Juvenile Division of the Circuit Court of Dent County, made a ward of the court and placed under the supervision of the Welfare Department; that because of difficulties arising from visits paid to the Home, where he was placed by the Welfare Department, by defendant and her mother, Emmitt was transferred to Phelps County. On June 12, 1953, Emmitt Ray Slaughter was placed in the custody of petitioners and at the time of the trial of this case had been in their actual custody almost two years.
The evidence shows defendant was both physically and financially unable to care for and support her children; that she was uneducated and had been employed as a waitress in St. Louis, earning $35 per week; that she was divorced in 1950. At the time of the divorce the children were in the Welfare Department as wards of the court. Defendant testified that she was seriously sick and operated on in 1953 for female trouble; that she had been in the hospital several different times. She was married to Raymond John Krull in November, 1954, and they now live at 3418-A Holliday in St. Louis in a four-room upstairs apartment and pay monthly rental of $85; that Raymond has been married before. He is regularly employed in a garage earning $73 per week. They own no property.
Defendant testified that she voluntarily surrendered the minor child in question to the Welfare Department but had kept in touch with him. She admitted she had not had custody nor had contributed to his support since he had been adjudicated a neglected child; that she had given him some Christmas presents. She testified she had made two visits to see the child since he was placed with petitioners; that on one occasion she saw him but on the other time she was refused permission to visit with him by petitioners.
*411 The evidence shows that the other boy has been adopted and that the girl is now with her father.
In Missouri the right of adoption depends upon statute. Mo.Law Review, Vol. 12, p. 310; Chapter 453, Adoption, Vol. II, RSMo 1949, V.A.M.S.
Our Courts have held that adoption statutes must be strictly construed in favor of natural parents' rights in controversies involving termination of the relation of parent and child. Application of Graham, 239 Mo.App. 1036, 199 S.W.2d 68; In re Adams, Mo.App., 248 S.W.2d 63; Robertson v. Cornett, 359 Mo. 1156, 225 S.W.2d 780; In re Wines Adoption, Mo.App., 239 S.W.2d 101.
In the case at bar there is no contention that petitioners were not proper parties to have custody of the child and fit persons to be awarded his adoption. The evidence shows they were financially and morally qualified to furnish him a proper home.
In section 453.030 RSMo 1949, V.A.M.S., it is provided:
"In all cases the approval of the court of the adoption shall be required and such approval shall be given or withheld as the welfare of the person sought to be adopted may, in the opinion of the court, demand."
In section 453.040(2) it is provided:
"The consent shall not be required of a parent who has, for a period of at least one year immediately prior to the date of the filing of the petition for adoption, either willfully abandoned the person sought to be adopted, or willfully neglected to provide him with proper care and maintenance. * * *."
The law as declared in the adoption statutes must not be confused with the juvenile court provisions for delinquent or neglected children. Under the juvenile court provisions the court can provide for the care, discipline, supervision, protection and suitable custody and control of a neglected child during its condition of need. The purposes of such provisions are solely the welfare of the child, whereas the adoption code involves also the legal and civil rights of the parents and children and their natural status. The two proceedings are radically different in both purpose and effect. Relief of abandoned or neglected children is by no means limited to adoption, and can be afforded where needed without destroying the relationship of parent and child. Application of Graham, 239 Mo. App. 1036, 199 S.W.2d 68, 73.
We think the law is well settled that when the minor child in question was adjudicated a delinquent or neglected child by the Juvenile Division of the Circuit Court of Dent County, such judgment did not permanently deprive defendant of the right to the custody of her child. Such abandonment on the part of defendant continues until the parental care and support are resumed, and it does not follow that the purpose to forego all parental duties may not be repented of and a proper case of parental rights again acquired. 2 C.J.S. Adoption of Children, § 21(2), pp. 388, 389; Morris v. McGregor, Mo.App., 269 S.W.2d 171, 175.
In In re Perkins, 234 Mo.App. 716, 117 S.W.2d 686, the father was opposing the adoption of his minor child and the chief issue at the hearing was whether he had neglected to provide proper care and maintenance for two years last preceding the date of the filing of the petition (the law now being one year). This was one of the contingencies under the statute which dispensed with the necessity of obtaining consent of the parent as a condition to the court's right to the decree of adoption. On page 691 of 117 S.W.2d of the opinion, this law is stated:
"Adoption proceedings being statutory, there is always the question of how the statute shall be construed, with the answer usually depending upon the angle from which the subject is approached. It is of course true that the statute is to be liberally construed with a view to promoting the best interests of *412 the child, but such liberal construction is obviously not to be extended to the question of when the natural parents may be divested of their rights to the end that all legal relationship between them and their child shall cease and determine. Conceding that the state, in its role of parens patriae, may, where the circumstances warrant, provide for the adoption of a child even as against the consent of its natural parents, yet it must always be borne in mind that the rights of natural parents to the custody and possession of their children are among the highest of natural rights, and, being so, are not to be interfered with by the state except where it clearly appears that the natural parents have forfeited their rights by their own misconduct and that the child's best interests will be served by allowing it to be adopted by some one else. Consequently, it is uniformly held as a simple matter of natural justice that adoption statutes are to be strictly construed in favor of the rights of natural parents, and that when controversy arises between natural parents and those who seek to destroy their parental status, every reasonable intendment is to be made in favor of the formers' claims. 1 Am.Jur., Adoption of Children, sec. 9; 2 C.J.S., Adoption of Children, § 6.
"In fact, so scrupulously does our statute regard the rights of natural parents that it provides (Sec. 14074, supra) that the court may not decree the adoption of any minor without the written consent of its parents, save only in certain excepted situations among which is the case where the parent has `neglected to provide proper care and maintenance for the two years last preceding' the date of the filing of the petition for adoption. * * *"
The controversy here arises between defendant, the natural parent, and petitioners, who seek to destroy the parental status, and, under the law, every reasonable intendment will be made in favor of defendant's claim. The rights of defendant to custody and possession of her child are not to be interfered with except where it clearly appears that defendant has forfeited such rights by her own conduct and that the child's best interest will be served by allowing the adoption. The law has been uniformly followed that as a matter of simple justice the adoption statutes are to be strictly construed in favor of the natural parent.
Our courts may not decree an adoption of any minor without the consent of the natural parents unless such parent, for a period of at least one year immediately prior to the filing of the petition, has either wilfully abandoned such minor or wilfully neglected to provide him with proper care and maintenance, and, the question presented in the case at bar is whether the mother may be fairly said to have wilfully abandoned the minor sought to be adopted, or wilfully neglected to provide him with proper care and maintenance for one year immediately prior to the filing of the adoption petition. It is upon such provisions of the statute that petitioners based their contention that the court had the legal right to sustain their petition over the objection of defendant to the adoption.
There can be no denial that defendant failed to provide for the child's support and maintenance for nearly five years prior to the trial of this cause. However, this may not forfeit the natural rights of the parent to the custody of her minor child unless we find from the evidence that she either wilfully abandoned such child or neglected to provide him with proper care and maintenance within the meaning and contemplation of the statute.
It was held in In re Perkins, supra, 117 S.W.2d at page 692:
" * * * the statute obviously contemplates the same result, and the parent's consent to the adoption is not to be dispensed with upon the ground of his neglect of his child unless it is shown that such neglect was intentional, deliberate, and without just cause *413 or excuse, evincing a settled purpose to forego his parental duties over the period of time which the statute prescribes. * * *"
In the case at bar defendant did not give her written consent to the adoption and the sole question presented is whether the necessity of such consent was obviated by the wilful abandonment of the child or by her neglect to provide care and maintenance for one year preceding the filing of the petition.
In in re Watson's Adoption, 238 Mo. App. 1104, 195 S.W.2d 331, 336, it is stated:
"The statute does not define the term `abandon,' nor are there any decisions of this state to be found where a definition of it is given. Webster's New International Dictionary (2nd Ed.), Unabridged, defines `abandon' as: `To relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to desert, as a person to whom one owes a duty, allegiance, or the like.'
"A wilful abandonment then would seem to imply, first, a voluntary and intentional relinquishment of the custody of the child to another, with the intent to never again claim the rights of a parent or perform the duties of a parent; or, second, an intentional withholding from the child, without just cause or excuse, by the parent, of his presence, his care, his love, and his protection, maintenance, and the opportunity for the display of filial affection."
We could hardly find, from the evidence, that defendant's conduct, at the time she delivered the minor child to the Welfare Department, amounted to an intentional relinquishment of the custody to another with intent never to again claim the rights of a parent. But her conduct thereafter does evidence the intention to permanently abandon and forego all her rights as a parent to such child. The evidence shows that on different occasions the Welfare Department tried to get defendant to assume her parental duties by resuming custody and care of such child, which she failed to do; that the child was placed with petitioners for adoption almost two years prior to the present suit and defendant never at any time attempted to get custody of the child or support and care for him. True enough, she was uneducated and was at the time working in St. Louis at a salary of $35 per week, according to her testimony, yet she made no attempt to regain custody of this child until she filed answer and cross-petition in the present suit.
From such conduct we find that the trial court was justified in finding that she had wilfully abandoned him or had neglected to provide him with proper care and maintenance for a period of one year prior to the filing of the action as contemplated by the statute. We further find that the trial court was justified, from the evidence, in finding that defendant had failed to show that she was financially and physically capable of furnishing a proper home for the child; she lives in an upstairs apartment in St. Louis. She is married to a man who had been divorced. She has two other children younger than the child in issue, one adopted and the other with her father. There seems to have been no attempt to get custody of these children. We think the trial court was justified in finding that the welfare of this child would not be best served by restoring the custody to defendant.
Judgment affirmed.
STONE, and RUARK, JJ., concur.