In the Matter of the Adoption of Walter Riley HYMAN, a minor, Carlo Hyman, a minor, Charlie Hyman, a minor, Leroy Hyman, a minor, Gloria Hyman, a minor.

Woodrow HYMAN and Lucy Hyman, Appellants,

v.

George W. WOODS and Helen Marie Woods, husband and wife, Thomas Harold Stephenson and Geneva Louise Stephenson, husband and wife, Robert Hoskins and Alice Hoskins, husband and wife, Emmett Porter and Dorothy Porter, husband and wife, Respondents.

STATE of Missouri, Respondent,

v.

Gloria HYMAN et al., Defendants,

Woodrow Hyman et al., Appellants.

Nos. 7525, 7526.

Springfield Court of Appeals. Missouri.

Dec. 20, 1956.

William A. Moon, Springfield, for appellants.

Ray E. Watson, Watson, Richart & Titus, Joplin, for respondents.

McDOWELL, Presiding Judge.

This appeal is from a judgment of the Juvenile Division of the Circuit Court of Jasper County rendered in consolidated cases Nos. 7525 and 7526.

In case No. 7525, Woodrow Hyman and Lucy Hyman, parents of five minor children involved, appeal from decrees of adoption of said children.

In case No. 7526, they appeal from a judgment denying motions to modify a former judgment of the court rendered September 13, 1949, adjudging said minors neglected children, by restoring custody to the parents.

The evidence shows: That all of the minor children excepting Woodrow Hyman, Jr., the baby, were taken into custody by the Juvenile Court officer March 18, 1949, at the police station in Webb City at the mother's request. The children were dirty, hungry and suffering from itch or impetigo and badly in need of medical care at the time. The mother was crippled in her right leg from the thigh down, her ankle was bruised and black and she was walking with difficulty. She stated her husband had beaten her with a poker; that he had failed to provide her with money to support the children. Mrs. Hyman was placed in a hotel in Webb City by the officers until the next morning when the Juvenile officer came back and got the baby and she was sent to her people in Kansas City and to the hospital.

The Juvenile Court officer testified: "They were all, and especially the younger children were in a serious condition." He stated that as a result of the condition of these children he filed an information in the Juvenile Division of the Circuit Court of Jasper County charging the parents with child neglect. He gave this answer: "I filed a new information of further neglect on the part of the parents".

On September 13, 1949, this neglected child information, so filed, was heard by the court and the following judgment rendered, to wit:

"Now on this day this cause comes on for final determination, the parents Woodrow Hyman and Lucy Hyman appear in person and by their attorney, Max Patten, and the Court having heretofore heard all the evidence and being now well and fully advised in the premises, finds said children

to be neglected children within the meaning of the statutes in that the said parents have left said children alone; that they have failed to keep said children clean and properly fed and clothed; that they have not provided a proper home; that they have not properly cared for said children and allowed them to contract skin diseases and not furnished medical attention; and that the parents have fought and beaten each other continuously for more than a year.

"Whereupon, it is ordered and adjudged by the Court that Charlie Hyman, Gloria Hyman, Walter Hyman, Leroy Hyman, Carlo Hyman, and Woodrow Hyman, Jr., are made wards of the Court and placed in the care, custody and control of the Juvenile Officer."

This judgment was affirmed by the Springfield Court of Appeals in State v. Hyman, Mo.App., 230 S.W.2d 504.

William Kelley, Juvenile officer testified: "Q. Did you supervise the further placing of these children, Rev. Kelly, with various people for adoption? A. Yes, sir.

"Q. Did you take from them an application for the adoption of Walter Riley Hyman? A. That is right.

"Q. Did you make an investigation of Mr. and Mrs. Woods and of their home before the child was placed with them? A. Yes, sir.

"Q. Did you find it to be satisfactory for the adoption of Walter Riley Hyman? A. Yes, sir.

"Q. Do your records there show when you first turned Walter Riley Hyman over to the custody of Mr. and Mrs. Woods? A. I believe on the face of the application that is noted, and I don't have those applications. I believe they are with the files."

The witness testified that he thought the date of June 11, 1949, as shown on the application, was approximately the date. He then gave this testimony:

"Q. Now, Rev. Kelly, did you also have an application from Thomas Harold Stephenson and Geneva Alice Stephenson for the adoption of Carlo Hyman? A. Yes, sir."

He testified he investigated the Stephenson home before turning custody of the minor over to them and found the home conditions satisfactory for adoption. He gave this testimony:

"Q. And did you place Carlo Hyman with them for the purpose of having custody in preparation for adoption? A. That is right."

He testified that he investigated the home of Mr. and Mrs. Robert Hoskins and their general reputation; that he placed with them Charlie Hyman and Leroy Hyman for adoption. He stated their home life and their general reputation was satisfactory to the court; that these people resided in Texas County, at Lickling, Missouri.

He stated he was acquainted with Emmett Porter and Dorothy Porter, his wife, who reside at Asbury, Missouri, but, at the time of investigation, lived at Carthage; that he investigated the home for the purpose of placing Gloria Hyman, a girl, with them for adoption and found the home to be satisfactory. He testified that the children are still in the custody of those people under the original placement for the purpose of adoption.

The record shows that George W. Woods and Helen Marie Woods, husband and wife, filed a petition for adoption of Walter Riley Hyman, a boy born December 31, 1945, now in Jasper County, in the Juvenile Division of the Circuit Court of Jasper County on June 1, 1950; that Woodrow Hyman and Lucy Hyman, parents, filed a general denial to the petition. That on August 25, 1953, petitioners filed an amended petition in said adoption case.

The record shows that Thomas Harold Stephenson and Geneva Alice Stephenson, his wife, filed a petition in said Juvenile

Court July 17, 1950, for adoption of Carlo Hyman, born November 4, 1947. The parents filed a general denial to this petition, and, on August 25, 1953, petitioners filed an amended petition.

That Robert Hoskins and Alice Hoskins filed a petition for adoption of Charlie and Leroy Hyman, September 25, 1950, in the Juvenile Court of Jasper County; that parents filed a general denial to this action. That thereafter on August 25, 1953, an amended petition was filed.

That on June 1, 1953, Emmett Porter and Dorothy Porter, husband and wife, filed their petition in said Juvenile Court of Jasper County for the adoption of Gloria Hyman, born March 18, 1944. That on August 25, 1953, an amended petition was filed in this cause.

All of the above petitions for adoption were in the usual form and no question is raised as to the sufficiency of such petitions. Each of these petitions stated that the parents of said minor children had wilfully abandoned each of the children for one year next before the filing of the petition, and wilfully neglected to provide proper care and maintenance for said child one year preceding the filing of the petition.

On February 9, 1954, appellants filed in the Juvenile Division of the Circuit Court of Jasper County, motions to modify the judgment of the court adjudicating the minor children neglected and for restoration of custody and parental care. These motions alleged that petitioners have fully repented of the neglect of said children; that shortly after the rendition of the judgment of neglect, petitioners affected a reconciliation and have been living together as husband and wife since that date without difficulty or trouble and have had no fights or quarrels or marital difficulties of any kind but have lived a normal married life for the past four and one half years. Each of the petitions alleged that petitioners own a modern home in Joplin, well furnished, with ample room for petitioners and their children, and that said home is located in a good community on paved street and close to school.

The petitions allege that petitioners have been successful in their business life and have ample funds to support said children and to provide adequate educational advantages; that the income has been in excess of $500 per month for the past several years; that they are completing a modern tourist court which will have a value of around $200,000. They allege they have attended church regularly and are in position to give each of the children a good home, good educational advantages and the love and respect of both parents.

To support these motions to modify, appellants' evidence shows: That since the judgment declaring their children neglected, they have lived peaceably together as husband and wife, have had no fights or disturbances; that they live in a modern, three bedroom house at 2014 West Fourth Street in Joplin; that the home is large enough to comfortably accommodate all of the family, including the children sought; that it is in a good community, close to church and school; that appellants attend church regularly and desire to raise the children in their church, the Catholic Church. The evidence shows that Mr. Hyman is a traveling salesman, 37 years of age; that his income from this work is $500 per month; that appellants also own a 14 unit motor court in Joplin and the income from it is about $1,500 a month; that the value of this court is about $100,000 and the value of the home about $20,000; that there is an encumbrance against the motel and home of $13,000. The evidence shows that Mr. Hyman owns three automobiles, a 1954 Chevrolet, 1951 Chevrolet and 1942 Chrysler. Both of appellants testified that they have lived a normal life for the last five years, have had no fights, quarrels or difficulties; that they desire to have restored to their custody their five children involved; that they are financial-

ly able to properly maintain and educate the children and desire to send them to high school, college and university.

The evidence shows there has been born a girl, now one year old, since the court's decree; that appellants are deaf mutes; that Mr. Hyman travels over the country, selling novelties and has other deaf mutes working under him; that he is away from home a part of the time and Mrs. Hyman maintains the home and a part of the time works at the motel.

The evidence shows that at the time the children were declared neglected, Mr. Hyman was in the same business as a traveling salesman; that he and his wife lived in Webb City; that they owned two houses, lived in one and rented the other; that they did develop serious marital trouble, fought with each other, permitted the children to go without proper care, separated and their home was completely broken up.

It shows that since the neglected child decree they have attempted on different occasions to regain custody of their children but such attempts were without success.

On April 28, 1953, this court affirmed the judgment of the lower court in an appeal by appellants in an adoption case involving Woodrow Hyman, Jr. The opinion is found in Hyman v. Stanley, Mo.App., 257 S.W.2d 388.

Many witnesses testified as to the reputation of appellants since the decree of neglect for being peaceable and good citizens in the community. One witness stated, "they have a wonderful reputation in our community". This witness stated that Mrs. Hyman made a good mother for the child she has at home and that this child is well cared for; that Mrs. Hyman is a real good housekeeper and is a wonderful neighbor. She stated that Mr. Hyman was a good neighbor, so far as she knew; that she did not see him often.

Witnesses testified that the neighborhood, where the Hymans lived was desirable and composed of nice homes and nice people; that there had been no disturbance by the Hymans in the last four or five years and they had not heard of any family difficulties. Many witnesses testified that the marital life of the Hymans for the past two and one-half or three years had been peaceful and they had never heard any quarreling or disturbances between them.

We think the testimony, on the part of appellants, establishes that they have been having a normal marital life, at least the past two or three years. It was admitted that some two or three years back there had been difficulty over a crippled girl being kept by the Hymans in their home; that the parents of the girl came and got her.

Frank Martin, a member of the police department of Joplin, testified that a couple years ago the police were called out to appellants' home for disturbance of the peace a time or two. He testified he personally witnessed the disturbance at the time of the arrest; that Mr. Hyman's conduct in relation to his business affairs was not so good but had been fairly good for the last four or five years. He gave this testimony:

"Q. Have you had similar complaints like that from different states and different communities hereabout? A. Yes."

He stated he returned the crippled girl to her parents. On cross-examination he gave this testimony:

"Q. You haven't arrested Woodrow Hyman at any time, have you, Frank? A. Well, I have been more or less on the calls when I was sent after him.

"Q. Did you make any arrest? A. Yes. Yes, I have arrested him.

"Q. Did you put him in jail? A. Yes.

"Q. Any convictions? A. Yes."

The witness testified that Hyman was convicted for disturbing the peace.

The testimony shows that the trial court, from June, 1948, until after the decree of neglect in September, 1949, tried to get appellants to provide a proper home for their children and take care of them; that he had them before the court often and had a great deal of trouble with them. At one hearing in the court Mrs. Hyman, who had her leg in a cast, during the hearing went to the back of the courtroom, kicked over chairs, and, at another hearing threatened to jump out of the courthouse window; that Mr. Hyman was difficult to handle and that he came to a pool room at one time and communicated to the court by a written note about the children; that later he tried to take the note away from the court. The record shows that the court was forced to issue an injunction against appellants to prevent them from annoying the children in the homes where they were placed by the court.

To sustain the appeal in case No. 7525, appellants' first allegation of error is that the petitioners in the adoption cases failed to prove that the children had been in their lawful and actual custody for a period of at least nine months prior to the entry of the adoption decrees as required by Section 453.080 RSMo 1949, V.A.M.S.

Section 453.080 RSMo 1949, V.A.M.S., provides:

"If the court, after due hearing, is satisfied that the allegations of the petition are true, that the person sought to be adopted, if a minor, has been in the lawful and actual custody of the petitioner or petitioners for a period of at least nine months prior to the entry of the adoption decree, and that it is fit and proper that such adoption should be made, a decree shall be entered setting forth the facts and ordering that from the date of the decree the person sought to be adopted shall, to all legal intents and purposes, be the child of the petitioner or petitioners, and the court may decree that the name of the person sought to be adopted be changed, according to the prayer of the petition."

In In re Davis' Adoption, Mo.App., 285 S.W.2d 35, 37, cited by appellants, the law is stated:

"It appears quite obvious that it was the intention of the Legislature to lay down a rule whereby the custody of a child could not be transferred at the will or whim of an individual in charge of it, but, on the contrary, a transfer of custody of a child must have the sanction of a court given by an order approving such transfer."

Section 453.080 requires the court to find that the minor child has been in the lawful and actual custody of petitioners for a period of at least nine months. The court in the above case stated:

" * * * Lawful custody under the statute could only be custody obtained by compliance with the law. * * *"

In the above cited case it was held that where the petitioners were shown to be otherwise suitable to adopt the child, the decree of adoption should be held in abeyance in any action upon the petition to adopt until the lapse of the required nine months.

Appellants cite Sherrill v. Bigler, Mo. App., 276 S.W.2d 473. This was an original proceeding in habeas corpus by the natural parents to obtain custody of their minor girl. On page 476 of the opinion we held that the minor child whose custody was transferred by the court in a pending adoption action was made without compliance with the adoption law, Section 453.-070 RSMo 1949, V.A.M.S., in that no investigation was made before such order as required by the statute. On page 477 we made this statement of law:

"It has long been the law in this state that parents are not bound by contract or gift of their children. The state is an interested party in the welfare of children. Our statutes provide that legal custody of a child can be secured only through an order of the Juvenile Court."

In Hyman v. Stanley, Mo.App., 257 S. W.2d 388, 393, this court held that the validity of a judgment decreeing adoption on the ground the minor child had been wilfully neglected must be determined solely by statute relating to adoption.

We think the above decisions clearly define the law applicable in the case at bar. We do not agree with appellants that the evidence fails to show that the children in each of the adoption cases herein involved had been in the lawful and actual custody of the petitioners for a period of at least nine months prior to the adoption decree. We have set out the order of the court made September 13, 1949, in which the minor children involved were declared neglected children, made wards of the court and placed under the control and supervision of Mr. Kelley, the Juvenile Court officer. The evidence then shows that Kelley, acting under the consent and direction of the court placed these minor children in each of the homes for the purpose of adoption; that he took from each of the petitioners an application for adoption; that he had made an investigation of their homes for suitability for the children for adoption and found the homes suitable. The Juvenile Court officer is the representative of the court and acts under his direction and we find that the trial court was right in holding that the children were placed with petitioners under the order of the court so as to make the custody a legal custody within the meaning of the statute. We find no merit in this contention.

■ Appellants' allegation of error II alleges: "That the verdict in each of said adoption cases is against the evidence, against the weight of the evidence and against the law under the evidence."

Under 42 V.A.M.S. Supreme Court Rule 1.08 this allegation of error is entirely too general to present any issue for decision.

Paragraph (d) of this rule provides:

"The points relied on shall briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed. Setting out only abstract statements of law without showing how they are related to any action or ruling of the Court is not a compliance with this rule." Hooper v. Wineland, Mo. App., 131 S.W.2d 232; Dean v. State Social Security Commission of Mo., Mo.App. 123 S.W.2d 573.

Under this allegation of error appellants state that it is the duty of the court to review the whole record as in cases of an equitable nature and decide the case on its merits, according to the interest of the child, having in mind a proper deference to the findings of the trial court on disputed questions of fact where matters' of credibility of the witnesses are involved.

■ This statement by appellants was taken word for word from Wilson v. Wilson, Mo.App. 260 S.W.2d 770, and the same law is declared in Morris v. McGregor, Mo. App., 269 S.W.2d 171, and Rex v. Rex, Mo. App., 217 S.W.2d 391, 394. We agree with this abstract statement of law.

Under sub-section (2) appellants stated that in absence of evidence to the contrary, the law presumes that the child's welfare will be best served by committing its custody to the parents. That right should never be denied, except for the most cogent reasons, and unless it is clearly shown that both parents are unqualified.

■ It is unnecessary to state the holdings of the authority cited for that is an admitted general principal of law. But it is merely an abstract statement and there is nothing to show that the trial court did not follow the law. The statements are in violation of Supreme Court Rule 1.08 and

will not be further considered by this court.

Judgment is affirmed in appeal, case No. 7525.

 In appeal, case No. 7526, appellants' first allegation of error reads: "The verdict was against the evidence on behalf of appellants, which evidence was uncontradicted."

The alleged error is too general to submit any issue for decision. Supreme Court Rule 1.08(d); Repple v. East Texas Motor Freight Co., Mo.Sup., 289 S.W.2d 109; Jackson v. Ricketts, Mo.App., 288 S.W.2d 10; Moon Distributing Co. v. Marable, Mo.App., 287 S.W.2d 635; Dansker v. Dansker, Mo.App., 279 S.W.2d 205.

Under this alleged error, appellants state that it is the duty of this court to review the whole record as in cases of an equitable nature and decide the case on its merits, according to the interest of the child having in mind a proper deference to the findings of the trial court on disputed questions of fact where matters of credibility of the witnesses are involved, citing Wilson v. Wilson, Mo.App., 260 S.W.2d 770, 771; Morris v. McGregor, Mo.App., 269 S.W.2d 171; and Rex v. Rex, Mo. App., 217 S.W.2d 391, 393, 394.

With this statement of the law we agree.

Under (2) appellants state: "In the absence of evidence to the contrary, the law presumes that the child's welfare will best be served by committing its custody to the parents. That right should never be denied, except for the most cogent reasons, and unless it is clearly shown that both the parents are unqualified."

In Rex v. Rex, supra, the Kansas City Court of Appeals in passing upon a child custody case, 217 S.W.2d on page 393, made this statement of law:

"In reference to the custody of children the welfare of the child is the star by which the court is guided. All other questions are subordinate."

The same law is declared in Morris v. McGregor, supra; Cox v. Carapella, Mo. App., 246 S.W.2d 513; and Swan v. Swan, Mo.App., 262 S.W.2d 312. With this law we agree.

Under sub-head (3) appellants state: "The judgment of the trial court finding a child neglected does not deprive the natural parents of their child permanently. The parents can regain custody by showing to the court their ability to properly care for and maintain it."

This rule of law was declared by the Springfield Court of Appeals in Hyman v. Stanley, Mo.App., 257 S.W.2d 388, 391, and the cases cited therein. But, under these abstract statements of law, appellants are not aided. They do not point out in what manner the trial court erred in failing to properly follow the law.

Allegations of error numbered II and III allege that the trial court erred in the exercise of its judicial discretion in refusing to restore the appellants to their full parental rights; that the trial court's judgment is in conflict with a clear preponderance of the evidence disclosing a manifest abuse of judicial discretion.

Section 510.310 RSMo 1949, V.A.M.S., is cited to sustain this theory. Subsection (4) of this section reads:

"* * * The question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court. The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * *"

In Swan v. Swan, supra, cited by appellants, the court held that the court of ap-

peals is required to arrive at its own conclusion as to what disposition of child's custody will be for its best welfare, but due regard must be given to the opportunity of the trial court to judge of the credibility of the witnesses, and his judgment will not be set aside unless clearly erroneous and in conflict with the clear preponderance of the evidence disclosing manifest abuse of judicial discretion.

Following this principle of law we find that the trial court's judgment in each of the adoption cases, consolidated in case No. 7526, is amply supported by the evidence offered. The evidence shows these minor children were in destitute condition when declared neglected children by the trial court. They were dirty, improperly clothed, without a proper home and with virtually no food, sick and in need of medical attention. Appellants' home was completely broken up. They were fighting each other. The mother informed the officers that she was in danger of her life from her husband. At that time they were divorced. There was no cause for such conduct. They had sufficient means with which to properly care for their children.

During the months that followed the judgment of the court, declaring the children neglected and making them wards of the court, hearing after hearing was had in which the trial court tried to work out some suitable plan by which these appellants could have their children, yet, their marital difficulties continued. They not only abused each other but their conduct at hearings in the court was such as to indicate their unworthiness to have such children.

These children were placed in homes found suitable by the court, for adoption. They were properly cared for, medical treatment furnished and they have been nursed back to a state of good health. They have been in these homes for more than five years and do not know any other parents except those who are asking to adopt them. It was the duty of the trial

court in determining the custody of these children to consider their welfare as the primary consideration. All other questions were subordinate. The testimony amply supports the judgment of the court.

Judgment in appeal, case No. 7526, is affirmed.

STONE and RUARK, JJ., concur in result.