Ernest E. BAILEY (Plaintiff), Respondent,

v.

Roxanna BAILEY (Defendant), Appellant.

No. 29877.

St. Louis Court of Appeals.

Missouri.

Nov. 5, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 8, 1958.

Joseph Langworthy, Pacific, for appellant.

Frank W. Jenny, James A. Cole, Union, for respondent.

RUDDY, Presiding Judge.

Plaintiff (husband) filed a suit for divorce alleging indignities. Defendant filed a cross bill for separate maintenance. The trial court found against plaintiff on his petition and against defendant on her cross bill and ordered plaintiff's petition and defendant's cross bill dismissed. Defendant appeals from the judgment dismissing her cross bill.

Defendant's cross bill was based on actual abandonment. She alleged that plaintiff deserted and abandoned her in March 1954, without good cause and has since said time failed, refused and neglected to maintain and provide for her. Plaintiff did not file an answer to defendant's cross bill.

Defendant, in the points relied on by her, contends that the evidence of indignities offered by the plaintiff, while properly admissible in support of plaintiff's petition for divorce, were not admissible nor to be considered by the trial court as matters of defense to defendant's cross bill, because plaintiff was in default for want of an answer to the cross bill required under the provisions of section 509.010 RSMo 1949, V.A.M.S.

Defendant makes the further contention that the trial court erred "in failing to apprise defendant that the order of trial would be such that the evidence of these specific indignities would be considered as defensive matters * * *." The only matter contained in the transcript of the record filed in this appeal concerning these contentions occurred after plaintiff had completed the presentation of his case. Thereafter, defendant took the stand and denied the indignities testified to by the plaintiff. After these denials the following took place:

"Mr. Langworthy: No further questions at this time.

"The Court: Mr. Langworthy, this is the time to put on your case.

"Mr. Langworthy: As I understand it, this is the defense to the plaintiff's petition, Your Honor; and then that we later put on our cross-bill.

"The Court: Now is the time to put it on.

"Mr. Langworthy: Do you want the cross-bill on now?

"The Court: Yes sir; they have closed their case.

"Mr. Langworthy: All right, I am sorry, I didn't understand it."

Thereafter, Mr. Langworthy, counsel for defendant, proceeded to have defendant testify to the matters offered in support of her cross bill. It is to be observed that no place in the colloquy between counsel and court did counsel object to the procedure followed by the court. He merely stated he did not understand that was the way the court wanted the presentation and thereafter, in conformance with the court's request, proceeded to put on evidence in support of defendant's cross bill. Prior to the trial defendant took no action concerning plaintiff's failure to file an answer.

It has been held that although no answer was filed in the trial court, if it appears from the record that the cause was tried as if an answer had been filed, on appeal the answer should be considered as filed. Crossland v. Admire, 149 Mo. 650, 656, 51 S.W. 463, and State ex rel. Shartel v. Skinker, 324 Mo. 955, 25 S.W.2d 472, loc. cit. 477.

Also in Linders v. Linders, 356 Mo. 852, 204 S.W.2d 229, loc. cit. 230, the Supreme Court said:

"Since the office of the pleadings is to define and to isolate the issues to those controverted so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of a cause on the merits, the absence of a formal pleading traversing the allegations of the answer should not be considered prejudicial to a party defendant who understood what issues were being tried."

The above is particularly true where no objection to the failure to file an answer is made. The record in this case shows no objection by defendant. While the stat-utory provision requiring an answer is mandatory, the enforcement of the provision is waived, unless the opposing party invokes the enforcement by timely and proper action. Pleiman v. Belew, 360 Mo. 219, 227 S.W.2d 733, loc. cit. 735, and cases cited therein. Walker v. Huddleston, Mo. App., 261 S.W.2d 502.

As we pointed out before, the defendant raised no objection to the failure of plaintiff to file an answer to her cross bill, nor did defendant object to the procedure followed by the court at the time of the trial. Under the circumstances we hold that the defendant waived the filing of an answer. It should also be pointed out that any answer to the cross bill would in all likelihood have been a repetition of the charges made in plaintiff's petition. Therefore, as pointed out in the Linders case, the defendant understood what issues were being tried. In connection with the contention of defendant that the trial court erred in failing to apprise defendant of the order in which the evidence shall be presented, this was a matter entirely within the discretion of the trial court to determine in what order the parties shall introduce their evidence. Deichmann v. Aronoff, Mo.App., 296 S.W. 2d 171, loc. cit. 179. We see no abuse in the trial court's order that would effect a prejudice to the rights of defendant. For the reasons assigned these points are ruled against defendant.

In another point relied on by defendant she contends the trial court erred in dismissing her cross bill because the evidence shows plaintiff abandoned her without good cause and that he refused and neglected to provide for her "for a period of over one year." Defendant in her cross bill alleged that plaintiff "deserted and abandoned" her about the month of March 1954.

Plaintiff and defendant were married February 8, 1911. Two children, now married, were born of the marriage. Prior to the alleged abandonment of defendant by plaintiff in 1954 there were intermittent separations of the two beginning with the

year 1939. These separations seemed to be the result of plaintiff's search for employment outside of the home area. However, plaintiff testified that when he would return defendant would say, "What did you ever come back for."

Plaintiff and defendant lived in St. Louis with a sister of defendant from about 1945 or 1946 to the time of the alleged abandonment. During that period and subsequent to 1954 defendant and her sister owned a restaurant in St. Louis. Prior to the year 1947 plaintiff also had an interest in this restaurant and worked therein as a cook. Defendant worked in the restaurant from 1945 and was still working there at the time of the trial. She said she had a half interest in the restaurant and that her share of the income from it was used for her support. According to her testimony the income from the restaurant was very meager. She testified that plaintiff contributed nothing toward her support after he left in 1954. This was admitted by plaintiff to be true. However, he testified that prior to that time he did support her to the best of his ability. Defendant in her testimony admitted that at one time she used her income to support the household and plaintiff's income was put in the bank. Her testimony further indicates that the money put in the bank was deposited under her name. At least, she had the right to withdraw the funds.

In 1947 plaintiff left the restaurant owned by him, his wife and her sister and bought a small restaurant of his own. There is some conflict in the testimony as to whether he was paid his interest in the restaurant he owned with his wife and her sister. Defendant said he was paid and plaintiff said he was not paid. What happened to this business venture of plaintiff is not clear in the record. It is sufficient to say the evidence shows that plaintiff was employed by the Diamonds Restaurant as early as 1949 and perhaps through 1951 and 1952. This restaurant is located a long distance from the City of St. Louis. Defendant and plaintiff visited each other while he was so employed. While plaintiff was working at this restaurant he wrote to the defendant and asked her to send him some money they had deposited together in a bank account in order that he may purchase a car. She testified that she sent him $600.00.

Concerning the conduct of defendant when plaintiff and defendant were together, plaintiff testified that his wife was cool and when he tried to engage in conversation she would frequently say "What did you ever come back for." He complained that she refused to discuss business and household problems and she nagged constantly and would remain at a distance. All of this testimony given by plaintiff was denied by the defendant. She testified that plaintiff was "high tempered." Defendant's sister on cross examination when asked about quarreling between plaintiff and defendant said that defendant "didn't quarrel with him much." All of the testimony in this regard was filled with conclusions of the parties and no specifications of the complaints were given. Suffice it to say that the marital relationship between plaintiff and defendant was one of indifference on the part of each. Neither seemed to be conscious of the obligations each owed to the other and neither seemed to contribute much toward an atmosphere of bliss and harmony. However, their relationship showed no real bitterness, merely indifference.

Defendant testified that in February or March 1954 plaintiff told her he was going to Lansing, Michigan, to work. She said she asked him not to go and that he told her he had been offered a job by his brother-in-law and wanted to go. On the day of his departure defendant and her sister took plaintiff downtown and paid for his dinner. Defendant testified that she and her sister accompanied plaintiff to the MacArthur Bridge where they expressed their farewells. Defendant did not see plaintiff thereafter until the court hearing. She did not know when plaintiff returned to Missouri. She said that for some time after he left he would write letters to her and she

to him. However, she admitted she had never asked him to come back because he said he had a job and she did not think he wanted to leave his job. Defendant testified plaintiff wrote to her almost every week until "Mother's Day" of 1954. She said she did not write to him since that time because she was not sure where he was.

At the trial the defendant in her cross examination said she did not want plaintiff to come back to her. Thereafter, the trial judge asked defendant what she meant by this statement and she answered, "Well I don't see how he could come back, and use me the way he did before while he was there." Thereafter, the court said: "In other words, you do not feel that you could get along together, is that it?" and she answered, "I don't believe we could, no sir, after he has used me the way he has."

Plaintiff had been a tool and die worker but said he was no longer able to work at his trade. He testified that he has not been able to work "full-time" for the two year period prior to the trial because of "some limb trouble." At the time of the trial he was working part time at the Diamonds Restaurant and had earned about $900 in the year prior to the trial. This income was in addition to $82.70 per month Social Security collected by him. He said his physical condition prevents him from walking on hard floors. Defendant acknowledged the existence of plaintiff's disability and she said he walked with a decided limp. She knew of no other income received by plaintiff.

Plaintiff's employer testified that plaintiff was not able to work regularly and he thought plaintiff was working solely as a favor to him because he (the witness) needed his help. It will be remembered that plaintiff worked at the Diamonds Restaurant prior to leaving for Michigan.

■ In the case of Grieshaber v. Grieshaber, Mo.App., 313 S.W.2d 763, loc. cit. 764, we quoted from our opinion in the case

of Woodman v. Woodman, Mo.App., 281 S.W.2d 555, loc. cit. 559, as follows:

"An action for separate maintenance is a statutory proceeding governed by Section 452.130 RSMo 1949, V.A.M.S. The appellate courts of this state have consistently ruled that the statute means just what it says, and that before a wife can prevail in a suit for separate maintenance, she must prove abandonment by her husband and a failure on his part to support her. If either element is absent, she is not entitled to recover * * *. There being a statute authorizing the proceeding, a suit for separate maintenance is a statutory action at law, but it has been ruled that it is sui generis, and governed by the rules of equitable procedure, * * * and each case of this character must rest and be decided on its own facts * * *. While we are not bound by the action of the trial court, it is our duty to defer to its findings unless we can point to some reason for not doing so, * * *."

Therefore, it is our duty to affirm the trial court unless its judgment is clearly erroneous. Oakes v. Oakes, Mo.App., 303 S.W.2d 940, loc. cit. 941.

■ Two things must appear from the evidence before the statutory action for separate maintenance can be upheld. The evidence must show an abandonment and a failure to support. In order to show an abandonment three things must concur and be established: (1) Cessation without good cause from cohabitation; (2) intention on the deserter's part not to resume same; (3) absence of the complainant's consent to the separation. Forbis v. Forbis, Mo. App., 274 S.W.2d 800; Thomason v. Thomason, Mo.App., 262 S.W.2d 349; McPheeters v. McPheeters, 207 Mo.App. 634, 227 S.W. 872.

■■ It is the burden of the defendant to prove by a clear preponderance of the

evidence all of the elements that would entitle her to a judgment for separate maintenance. Forbis v. Forbis, supra. It is obvious from a reading of the evidence that the trial court found defendant failed to sustain the burden she had under the law. When the plaintiff saw the need for going to Michigan in order to gain employment it was the duty of the defendant to go with him or show a legal excuse for not going. Elsey v. Elsey, Mo.App., 297 S.W. 978. While it is true the evidence does not show any request on the part of plaintiff to have defendant accompany him, it is obvious that she would not have acceded to his request, if made, in view of her comments when plaintiff said he was going. This much is clear from the evidence, that defendant did acquiesce in his leaving for Michigan. On the occasion of plaintiff's departure she took him downtown and accompanied him to the MacArthur Bridge where the farewell took place. There is nothing in the evidence to show that plaintiff on this occasion did not intend to resume cohabitation in the future. At this time he merely left to find employment in Michigan and thereafter, for some time, corresponded with the defendant. All the evidence covering this incident shows defendant acquiesced in the separation that took place at this time. Defendant in her cross bill alleged that this was when the abandonment took place. Her evidence fails to support this allegation. Nor can we find from the evidence of the events subsequent to March 1954 any proof of a real intention on the part of plaintiff not to resume cohabitation. In addition, there is nothing in the evidence of the subsequent events to show that defendant no longer acquiesced in the separation. The first evidence of plaintiff's intention not to resume cohabitation occurred when he filed his petition for divorce.

A careful study of the evidence shows the real reasons these two people are separated were plaintiff's efforts to find employment which took him from St. Louis and defendant's desire to remain in the restaurant she and her sister owned. Each was as much at fault as the other. The trial court had ample grounds for finding the defendant consented or acquiesced in the separation at the time plaintiff left for Michigan and thereafter. Such a finding is sufficient to destroy defendant's charge of legal abandonment and this is true without giving any weight or consideration to defendant's testimony wherein she told the court she did not want plaintiff to return.

■ Defendant's cross bill charged actual abandonment. We can find no reason to convict the trial court of error in dismissing defendant's cross bill for failure to sustain the charge of abandonment.

Defendant also contends that the trial court erred in considering evidence tending to show the present unwillingness of defendant to resume cohabitation with the plaintiff. This complaint refers to the inquiry made by the court when defendant was testifying. Defendant cites the case of Stauffer v. Stauffer, 205 Mo.App. 515, 226 S.W. 40, in support of this contention. In the Stauffer case this court held that the husband's offer to return made many years after the wife's right to a divorce on the ground of desertion had become fixed, will not defeat the wife's action for maintenance, even though the offer was refused by her. There is nothing in this record to show that defendant's cross bill was dismissed because of her unwillingness to take back her husband if he wanted to return. As we said before, there was sufficient reason for the trial court's dismissal of the cross bill without giving any weight or consideration to this portion of defendant's testimony.

Finally the defendant complains that the trial court erred in refusing to take judicial notice of the Social Security Act, 42 U.S. C.A. § 301 et seq., and in refusing to consider arguments concerning the effect of the Act. There is nothing in the record to support these complaints. Furthermore, the

complaints, if true, become irrelevant in view of our findings.

We find no error in the trial court's judgment and it should be affirmed. It is so ordered.

ANDERSON, J., and JOHN K. REGAN, Special Judge, concur.