In the Matter of the **ADOPTION OF J———.**

No. 8472.

Springfield Court of Appeals.

Missouri.

Nov. 4, 1965.

Charles D. Tudor, Joplin, for Mother appellant.

James E. Brown, Joplin, for petitioners-respondents.

RUARK, Presiding Judge.

This is an appeal from a decree of adoption. The subject is a girl child, twelve years of age at time the decree was rendered. The successful petitioners were the natural and legal father of the child *and* his present wife, the stepmother. The appellant is the mother of the child. The principal question is whether the consent of the mother was not required because the mother had "for a period of at least one year immediately prior to the filing of the petition for adoption either wilfully abandoned the child or wilfully neglected to provide [her] with proper care and maintenance."

The father and appellant mother were married in 1951, and the daughter, an only child, was born in 1952. In July or August, 1960, they began to have trouble which resulted in a separation in September. The mother went to a friend's home. There is conflict as to whether she took the child with her; but at a conference held "a month or so" after the separation at an apartment (then occupied by the mother) between the father, the mother, and the maternal grandmother, the daughter was required to express her preference and the result was the daughter was returned to the father's home. On *November 15, 1960,* the mother filed petition for divorce alleging indignities. Her petition stated that plaintiff was now required to work, and considering the time required in so working, and the amount of income realized therefrom, she was not "now" in position to accept care and custody, that the child was receiving proper care from the father and it would be for the best interest of the child "for the time being" to remain in the care and custody of the father. Prayer was for divorce and care and custody to the father with reservation of reasonable visiting rights in the mother. On the following day the father filed an entry of appearance, waiver of service, and consent to trial and decree without further notice. Later he filed an answer admitting all allegations of the petition except the paragraph charging indignities, which he denied. On *January 3, 1961,* decree of divorce was granted to plaintiff mother, and custody of the child was awarded defendant father with right of visitation in the mother at reasonable times, and right to have the child visit her at times to be agreed by the parties. Thereafter and until the mother left the vicinity for California, she visited with the daughter and had her overnight on occasions.

In early May of 1961 the mother went to California and to the home of the paternal grandmother, her former mother-in-law. It is the testimony of this paternal grandmother which contains practically the whole indictment against the mother. We will relate it more fully hereafter. In the meantime, we will attempt to finish the chronological statement of events.

The mother had been a member of the Air Force and had served in California. There she had been acquainted with one B. She got in contact with him, and the result was that on *May 18, 1961,* she married him. The father also did not waste much time and on June 30, 1961, married his present wife. This lady has two children of a former marriage.

In late July or *early* August, 1961, the mother returned to Missouri. It is apparent

that she and the father had difficulty concerning visitation of the mother with the child, and on *August 2, 1961,* she filed motion to modify the divorce decree. This motion alleged that both parties had remarried, that the father refused to permit visitation, and that he had attempted to alienate the affection of the child for the mother; that the father and stepmother were both employed and it was necessary for an "outsider" to care for the child; that the mother's present husband was employed and it was no longer necessary for her to work. The mother prayed for modification granting her care and custody. She further alleged that it was necessary for her to return to California on *August 12, 1961,* prior to a possible adjudication on the motion and prayed for an order permitting temporary custody of one week. On *August 3, 1961,* the husband filed application for disqualification of judge. On *August 4* said application was sustained and a judge from another circuit was called. On *August 7* the special judge conducted a hearing on that part of the motion dealing with temporary custody and ordered such temporary custody in the mother until *August 11* at which time custody was ordered returned to the father. After that the mother returned to California and on *November 3, 1961,* dismissed her motion to modify. On *November 22, 1961,* the father, joined by his present wife, the stepmother, filed petition for adoption of the girl here involved and of the two sons of the present wife by her former marriage. The allegations were that the defendant parents of the children had (a) wilfully abandoned and (b) wilfully neglected to provide proper support for said children for one year last preceding the filing of such petition. To that appellant mother answered by denying wilful abandonment or neglect and alleged that she did assert her right to have reasonable visitation; that after she moved to California she found it necessary to file a motion to modify and was granted temporary custody; and that she had from time to time made demand for visitation and had been refused. There the matter rested

in court until *June 24, 1964,* when the issues on the petition for adoption were tried and taken under advisement. On *November 20, 1964,* the mother again filed a motion to modify in respect to permanent custody and permission to take the child to California, and for temporary custody prior to November 28, 1964, when it would be necessary for her to return to California. To this motion the father filed answer setting up the substance of that which we will hereafter state, and opposing both modification and temporary custody. On this motion (heard by special judge) temporary custody of three and a half days was allowed to the mother. On *December 7, 1964,* the court in the adoption case decreed adoption of the child by the petitioners, father and stepmother. The memorandum filed by the judge determined that there had been an intentional abandonment of the child by the mother for a period of almost three years. This finding was based on the testimony of the paternal grandmother, given by deposition in Missouri on *June 3, 1964.*

It will be recalled that the mother went to the home of the paternal grandmother in California in May 1961. She (the grandmother) testified that the mother told her the following: She (the mother) had kept contact with B, whom she had known while in the Air Force. She came out to find if he was still in love with her. The next day she told the witness that she and one G, a married man with four children, were desperately in love and she didn't know what to do; that it was because of G that her marriage to the father broke up. She said that G was the only man who could satisfy her sexually, but she wanted to see B again in order to make up her mind whether to marry him or go ahead with G. She said she was going back to Missouri to see G; that she got letters from him daily. The paternal grandmother testified that G called the mother on the phone and said his wife would not agree to a divorce. The mother then became hysterical and said she thought she was pregnant by G and sent a

specimen to the doctor to determine this before she married B. She married B on May 18. On June 6, B called her (the paternal grandmother) and told her that the mother had disappeared and had left a note telling him she was going away to think things out. A few days later the mother called B. and asked if she could come back. B told her (the paternal grandmother) that she (the mother) had been with G, but he (B) had forgiven her. Later the mother told the grandmother she had been with G on that occasion. The grandmother testified that the mother disappeared again about six weeks later and went back to Missouri, and her sister there sent her back to California.

This witness further testified that the mother had told her on the phone that she intended to come back in November and sue for custody, and it was in anticipation of that custody fight that she gave her testimony. She said she knew of no improper conduct on the part of the mother since 1961. She had learned from a son and daughter-in-law that the mother was trying to "cover herself with whitewash." She was living such a life that she would be able to get the child. She and B had started going to church, and she (the grandmother) knew of no reason to believe that the mother was not being true to B. She testified that B and the mother didn't have an abundance of money. All she (the paternal grandmother) knew concerning the misconduct of the mother was covering a period of a month, and what she, the mother, told her. She knew that there was correspondence between the mother and the child, she had seen some of the letters; she knew that the mother sent the child gifts. She considered that the mother abandoned the child because of her love affair with G. She had left without the daughter. It was a psychological, not physical, abandonment. There was no need for the mother to leave Missouri. Her love affair with G after the divorce was the abandonment. She wasn't considering the child; she was considering her own love life, and that constitutes abandonment. Her son and his present wife have a good Christian home. The child does not want for anything, and there is a great deal of affection between the child and the step-mother. She is a better mother than the appellant. The child will be much happier where she is.

The petitioner father testified: He had had custody of the child since the divorce. He permitted his ex-wife to see the child when she wanted to with one exception. The mother had actual custody (per court order) for four days in August 1961. During the period of separation prior to the divorce, the child did not live with the mother but was with the mother from time to time. After the divorce the mother asserted the right of visitation, and then she moved to California. The mother wrote the daughter about once a month, and the child to her. He had read all the letters, both the mother and child's. The mother sent the daughter clothes, a box of toys, perfume, lipstick, and a cheap ring. The child was not happy with the gifts. The mother did see the child in the year before filing of the petition. He stated that the reason he was trying to cut off the legal relationship between mother and child was, "You stated in this court the last time that we were up here that my former wife is going to sue for custody this Thanksgiving. This is one good reason. Now, another good reason is that my former wife would take the child away from me and I wouldn't want anything like that to happen to that little girl."

The mother testified by deposition taken in California by California attorneys, on May 7, 1964. She said that after the separation (in 1960) her daughter stayed with her about a month and then was returned to the father's home because she expressed that as her preference, but after that she had the daughter in her apartment, occasionally overnight. During that period she couldn't give her daughter any money because she didn't have any. She got temporary custody for four days in August

1961, and then had to go back to California. Since then she had written her daughter at least once a month and had sent her gifts on special occasions. Her daughter had written her four letters. The last one was after she, the mother, had sent a certified letter. She maintained her GI insurance with her daughter as alternate beneficiary. She, the mother, made a gross salary of three hundred-fifty dollars per month. Her husband had been unemployed for a period but was now making eighty dollars per week. On objections and instructions from her attorneys, she was not permitted to answer any questions concerning her relationship with G or B or as to any conversations she had with the paternal grandmother.

 It is frequently said that the relationship of parent and child is one of the highest of natural rights with which the state will not interfere simply to better the moral and temporal welfare of the child, as against a parent who has not forfeited such right. (2 C.J.S. Adoption of Children § 21a [1], p. 384). And it is generally held that statutes which permit the termination of this right must be strictly construed against deprivation of parental rights (In re G, Mo.App., 389 S.W.2d 63 [1]; In re G. K. D., Mo.App., 332 S.W.2d 62, and cases cited at 66; 2 Am.Jur.2d Adoption, § 7, p. 866), at least to the extent that any conditions which deprive the parent of the power to withhold consent must be "substantially complied with." In re C.C. and C., Mo.App., 380 S.W.2d 510, and cases at 514.

Section 453.040(4), RSMo V.A.M.S., as amended Laws of 1959, H.B. No. 438, § 1, provides that parental consent is not required of one who has *"for a period of at least one year immediately prior to the filing of the petition for adoption"* either (a) wilfully abandoned the child or (b) wilfully neglected to provide (her) with proper care and maintenance.

The failure to contribute financially to the support of the child is of course not an element here. She was in the custody of the father, who was legally and morally bound to support her, and the evidence shows that the child was not in want. The respondents in their brief admit that there was no abandonment or desertion in the sense of total lack of contact or communication during the year preceding the filing of the petition (November 22, 1961) but assert that the mother was guilty of a course of conduct over that period tending to show a complete and "intentional disregard for the welfare of the child and failure to provide the child with her presence, care, supervision, maintenance, or any reasonable opportunity for normal display of affection and companionship."

 The abandonment or neglect specified as a condition which obviates necessity of parental consent is such as constitutes "first, a voluntary and intentional relinquishment of the custody of the child to another, with the intent to never again claim the rights of a parent or perform the duties of a parent; or, second, an intentional withholding from the child, without just cause or excuse, by the parent, of [her] presence, [her] care, [her] love, and [her] protection, maintenance and the opportunity for the display of filial affection." It must be shown that the neglect was intentional, deliberate, and without just cause or excuse.[1] The abandonment must be absolute, complete, and wilful. There must be a settled purpose to forego all parental duties and relinquish all parental claims. Annotation: 35 A.L.R.2d 664, et seq.; In re Perkins, 234 Mo.App. 716, 117 S.W.2d 686.

 Evidence of conduct either before or after the statutory period might be

---

1. 2 Am.Jur.2d Adoption, § 32 et seq., p. 886; In re Watson's Adoption, 238 Mo. App. 1104, 195 S.W.2d 331(2); In re Adoption of J. M. K., Mo.App., 363 S.W. 2d 67, 72; In re Adoption of P. J. K., Mo.App., 359 S.W.2d 360, 363.

admissible as throwing light upon the purpose and intent of the parent. State v. Pogue, Mo.App., 282 S.W.2d 582, 588. Nevertheless, the conduct of the parent which amounts to abandonment or neglect must have occurred during the year immediately preceding the filing of the adoption (November 22, 1961), because this is the requirement of the statute; and the abandonment or neglect must have continued for the period of the year in question. Abandonment or neglect may be repented and terminated,[2] and if so repented and terminated within the period claimed, and if resumption of the relationship in good faith is attempted, then the statutory provision which dispenses with consent is no longer applicable, because the condition has not continued for "at least one year." 2 C.J.S. Adoption of Children § 21d, p. 387; Application of Graham, 239 Mo.App. 1036, 199 S.W.2d 68, 75.

These things occurred during the year in question: The mother had at least partial custody or visitation with the child up to the time the divorce was granted in January 1961. In her petition for divorce she prayed for, and was granted, the right of reasonable visitation. After the divorce and before going to California in *May*, she availed herself of that right. In August of that year she was back with a motion to modify, secured a temporary order of custody, and had such custody for a period of four days.

During the period while she was in California, she wrote letters to her daughter, and upon occasions sent her presents. She changed her GI insurance to her present husband but retained her daughter as contingent beneficiary. Those things are not the acts and attitude of one having a settled purpose to forego all parental duties and relinquish all parental claims with the intent to never again claim the rights of parent, nor to show an intentional disregard for the child, or a failure to provide her presence and reasonable opportunity for display of affection and companionship. They are affirmative acts which refute a negative inference of "neglect" when considered in reference to the situation in which the mother then found herself and the opportunities then available for the exercise and demonstration of parental concern.

The respondents, as did the trial court, base the finding of abandonment or neglect primarily upon the affair of the mother with G. There is no evidence as to when this affair began (the separation was in September 1960), but it was over and done with by June or July of 1961. At least there is no evidence to the contrary. And the further evidence is after such time she and her present husband have been living a "whitewashed" life; and after such time, and before the yearly (statutory) period expired, she was back asserting her parental rights.

█ The trial court in its memorandum filed with the decree recognized the fact that the mother obtained and availed herself of visiting privileges but was of the opinion that this was a matter of "quieting her conscience rather than any sincere desire for custody * * * or for companionship with the child." We do not possess the divine power to look into the mind and heart of a mother, even an erring or sinful mother, and separate and distinguish those thoughts and acts which come because of the yearnings of a mother for her child from those which are prompted by a guilty conscience; but, if they *were* the product of a guilty conscience, it was nevertheless a mother's conscience; and those things done were not the acts of a mother who had a settled purpose to forego all parental rights or wilfully with-

---

**2.** 2 Am.Jur.2d Adoption, § 36, p. 890; Hyman v. Stanley, Mo.App., 257 S.W.2d 388; Application of Graham, 239 Mo.App. 1036, 199 S.W.2d 68, 74; In re Slaughter, Mo.App., 290 S.W.2d 408, 411; see State v. Pogue, Mo.App., 282 S.W.2d 582, 587.

hold all parental concern and affection for her child. Accepting as true in all respects the testimony of the paternal grandmother, as did the trial court, we are not to be understood as approving or upholding the mother's conduct during the month or few months in which she was so obsessed with her infatuation, probably sexual, with G that all other things, including her daughter, became secondary and subject to sacrifice in favor of that aberration; the fact remains this "psychological abandonment" did not continue for the statutory period of one year immediately prior to the filing of the petition.

 An adoption proceeding is not a penal action to be used *as a means of punishment or vengeance*. P—— D—— v. C—— S——, Mo.App., 394 S.W.2d 437 (September 11, 1965) and cases cited. Neither is it primarily a custody proceeding (In re Perkins, 234 Mo.App. 716, 117 S.W. 2d 686). Custody as between parents who are living apart is ordinarily adjudged in divorce actions (In re Wines' Adoption, 241 Mo.App. 628, 239 S.W.2d 101 [4]) and in certain instances by juvenile court proceedings (In re Slaughter, Mo.App., 290 S.W. 2d 408 [4]). We think the evidence in this case shows that the primary purpose of this proceeding was to have the legal status changed so that the mother could no longer visit or contend for visiting rights. The testimony of the father so indicates.

Subject to the determination of whether there has been a loss of the right to consent or object by virtue of abandonment or neglect, there is yet another factor to be considered. In all adoption cases the paramount consideration is the welfare of the child. What benefit would this child obtain by the decree of adoption? The father and the stepmother have actual custody, and with them such custody will remain until and unless the court should at some future time find and decree that there has been such change of condition as requires the change or removal of such custody. This is not a case of an infant adoption where it is better that the child should not know her natural parent. This girl in her early teens knows her mother. Decree of adoption may change the legal relationship but it cannot wipe out that knowledge and any feeling which goes with it; nor will it even change her name. All it can do is (a) deprive the mother of the right of ever visiting the child during her minority (which visiting rights *may* be terminated in a proceeding on a motion to modify, *if* such be found just and proper) and (b) deprive the child of any inheritance from the mother. Wailes v. Curators of Central College, 363 Mo. 932, 254 S.W.2d 645, 37 A.L.R.2d 326. For a similar factual situation, see In re Richard, 201 Misc. 447, 106 N.Y.S.2d 92.

The adoption is denied. The judgment is reversed.

STONE and HOGAN, JJ., concur.