In the Matter of the ADOPTION OF
Karen Lea FULLER, a minor.

Dale Vernon WEBER and Jewell Dean
Weber, Petitioners-Respondents,

v.

Sharon Elaine FULLER, Natural
Mother-Appellant.

In the Matter of the ADOPTION OF
Keven Glenn FULLER, a minor.

Norman H. SCHWEISS and Shirley Jean
Schweiss, Petitioners-Respondents,

v.

Sharon Elaine FULLER, Natural
Mother-Appellant.

Nos. 9521, 9520.

Missouri Court of Appeals,
Springfield District.

Dec. 3, 1976.

Eugene E. Northern, Northern, Williams & Smallwood, Rolla, for appellant.

Arthur B. Cohn, Waynesville, for respondents.

Before BILLINGS, C. J., HOGAN and TITUS, JJ., and FRANK CONLEY, Special Judge.

FRANK CONLEY, Special Judge.

Appellant, Sharon Elaine Fuller, is the natural mother of Keven Glenn Fuller and Karen Lea Fuller. The natural father was Bobby Joe Fuller who died May 23, 1971. Appellant and Bobby Fuller were divorced in June 1968 in Laclede County, Missouri. At that time, appellant was given the care and custody of the two minor children and Bobby Fuller was ordered to pay child support. However, no child support was ever paid.

After the divorce, appellant made her residence near Waynesville, Missouri, in a rented home. Appellant paid the rent and all utilities and bought food and clothing for the two minor children. The only income appellant had was her own salary. In order to have sufficient income to support herself and the two children it was necessary for her to work at regular employment with the Waynesville School System and part-time at the post exchange, Fort Leonard Wood, Missouri.

There was testimony at trial that immediately after the divorce, when the children were in the custody of the appellant, they were undernourished and hungry all the time. On at least one occasion, appellant took the children with her to a nightclub where appellant's "boyfriend" worked and left the children alone in the car for several hours while appellant was inside. There was other testimony to the effect that the children were neglected while in the custody of their mother.

There was testimony that appellant told her ex-husband that if he would give her money to pay off the bills he had left her with, she would let him have the "damn kids". More than one witness testified that appellant had talked to them about giving the children to appellant's former husband in exchange for a sum of money. In October of 1969 the parents mutually consented to a modification of the child custody order, changing custody to the father. Appellant required as a condition of the modification that the children would live with the respondents. Appellant received $600 from her ex-husband at that time.

During the next twenty months, appellant saw the children three or four times including Christmases when their father brought them to appellant's grandparents' home. She also sent them birthday cards, but apparently made no other attempt to contact the children or to contact respondents about their welfare. In the year preceding the filing of the adoption petitions, appellant only saw the children one other time besides Christmas.

On May 23, 1971, the father died. Shortly thereafter, appellant obtained an order from the Circuit Court in Laclede County placing custody of the children with her. The respondents then obtained a writ of prohibition from this court. Appellant then sought a writ of habeas corpus. The record does not disclose the disposition of that action.

On June 9, 1971, respondents Dale and Jewell Weber filed their petition for adoption and temporary legal custody of Karen Lea Fuller in the Circuit Court of Pulaski County where the child resided. On June 11, 1971, respondents Norman H. and Shirley Jean Schweiss filed their petition for temporary custody and adoption of Keven Glenn Fuller in the Circuit Court of Phelps County where the child resided. Both petitions alleged "said natural mother has abandoned the child for a period of over one year before the filing of this petition."

On July 1, 1971, appellant entered her "Special Entry of Appearance on Motion to Dismiss for Want of Jurisdiction Over the Person and Subject Matter", in response to the petitions. No further action was taken as to either proceeding until October 8, 1971. On that date, while the motion to dismiss was pending and without notice to the appellant, the Circuit Court of Pulaski County entered a "Temporary Custody and Control Order" whereby custody of Karen Lea Fuller was transferred to the respondents Weber. On the same day "temporary legal control and custody" of Keven Glenn Fuller was given to the respondents Schweiss in the same manner by the Circuit Court of Phelps County.

On March 13, 1973, appellant filed answer in the Keven Glenn Fuller case and the cases were consolidated and trial was held in Phelps County that same day. No answer was ever filed in the Karen Lea Fuller case.

The court entered its decree of adoption in each case on March 13, 1973. Both decrees recited that the court found that "the natural mother of said child wilfully abandoned [the child] for a period of at least one year immediately prior to the date of filing said petition for adoption". Timely motions for new trial were filed and overruled and timely notices of appeal were filed by appellant.

Before considering appellant's other assignments of error, it should be noted that no answer was ever filed in the Karen Lea Fuller case. "While the statutory provision requiring an answer is mandatory, the enforcement of the provision is waived, unless the opposing party invokes the enforcement by timely and proper action." *Bailey v. Bailey,* 317 S.W.2d 630, 632 (Mo.App.1958).

In that case the court also said, "It has been held that although no answer was filed in the trial court, if it appears from the record that the cause was tried as if an answer had been filed, on appeal the answer should be considered filed."

As was stated in *In re Adoption of Rule*, 435 S.W.2d 35, 39 (Mo.App.1968), "It is our duty to review the record upon both the law and the evidence as in actions of an equitable nature and to reach our own conclusions, after giving due deference to the trial court on questions of credibility". Appellate courts should exercise the power to set aside a decree or judgment with caution and a firm belief that the decree or judgment is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976).

The appellant presents two basic contentions: 1) that respondents did not have legal custody for the requisite nine months, and 2) that the appellant did not wilfully abandon the children.

As to the first point appellant challenges the validity of the orders transferring temporary legal custody of these children to respondents because it was done without notice to appellant, without a hearing and without appointment of a guardian ad litem.

We must agree with appellant's contention that this order was invalid. In the case of *In re G*, 389 S.W.2d 63, 68[10] (Mo.App.1965), this court said, "There is a presumption that the natural parent is fit and qualified to have the custody of his or her child. And the right of the parent to such is not to be interfered with unless it clearly appears that such parent has forfeited his or her right". Although this language was used in connection with the reversal of an adoption decree, the principle applies to temporary custody orders as well. A denial of anything so fundamental as a parent's right to custody of her child cannot be made in so perfunctory a manner as was done here, and justified by the fact that the order was only temporary and the parent has a chance to get custody back several months later if the adoption is denied. If the court does later find that the parent is a fit parent and denies the adoption, how does it restore those months with the child that the parent has been denied? Although the evidence need not be as clear and convincing as that necessary to support an adoption, we think that some consideration of whether the parent has forfeited her right to custody must be made.

In *Ex Parte Ferone*, 267 S.W.2d 695, 700[1, 2] (Mo.App.1954), the court said of a child whose mother had brought a habeas corpus action to regain her custody:

"Her welfare is the superior objective in the matter of her custody. To that all other considerations must yield. However, it does not follow that the right of a parent to the custody of his or her child is to be ignored in such a proceeding. All else being equal, such right would be determinative as between such parent and all others. It is only when the exercise of such primary right by the parent is shown not to be in the best interest of the child, by reason of manifest unfitness or for other good and sufficient reasons, that a parent should not have the custody of his or her child."

A long history of Missouri cases involving the custody of children has held that there is a presumption that it is in the best interest of a child to be in the custody of his parents. *State ex rel. Crockett v. Ellison*, 271 Mo. 416, 196 S.W. 1140 (banc 1917), and cases cited therein; *Morris v. McGregor*, 269 S.W.2d 171, 175[3] (Mo.App. 1954). The burden is on those who wish to deny the parents custody to rebut that presumption. *State v. Pogue*, 282 S.W.2d 582, 588[6–9] (Mo.App.1955).

The order in this case was made before there was any evidence before the court except the home study report. This report dealt only with the fitness of the proposed adoptive parents and their home. We do not think the form of the action distinguishes this case from those previously cited. The rights of the parents and children to be together in the interim period before a decision is made on the petition for adoption cannot be adequately safeguarded

by the hearing on the adoption alone. For that reason we hold the temporary orders invalid. However, this does not necessitate a reversal of the adoption decree.

The adoption statute, § 453.080, RSMo 1969, V.A.M.S., requires that the child have been in the lawful and actual custody of petitioners for a period of at least nine months prior to the entry of the adoption decree. We think that the facts previously recited show that petitioners have complied with this requirement. The children were in fact placed with respondents as a part of the modification of the original divorce decree, and while that decree provided for custody to be placed with appellant's ex-husband, it was clearly understood by appellant that respondents would in fact have the actual custody. Was this custody lawful as the statute requires?

■ A court order transferring temporary legal custody to petitioners in adoption proceedings is not necessary for them to have lawful custody. *In re Adoption of K.,* 417 S.W.2d 702, 708 (Mo.App.1967). Therefore, respondents did have lawful and actual custody for the nine-month period prior to the entry of the decree.

In these cases appellant does not question the fitness of respondents as prospective adoptive parents. Rather, she claims that absent her consent, the trial court was not correct in finding that there had been a "wilful abandonment" for one year prior to the filing of the petition.

The review by this court is not directed toward a determination of who would in fact be the "best" custodian or parent for these minor children. Rather, this action seeks to resolve whether the parental rights of a natural parent should be extinguished permanently.

As was forcefully set forth in *In re Adoption of J,* 396 S.W.2d 257, 261[1] (Mo.App.1965):

"It is frequently said that the relationship of parent and child is one of the highest of natural rights with which the state will not interfere simply to better the moral and temporal welfare of the child, as against a parent who has not forfeited such right. And it is generally held that statutes which permit the termination of this right must be strictly construed against deprivation of parental rights . . . ."

As was also stated in *In Re Taylor,* 419 S.W.2d 473, 475[1] (Mo.App.1967):

"The action for termination of parental rights is designed to extinguish forever the pre-existing legal rights of the parents with respect to their child and is the subject of specialized legislation. The power of the juvenile court to effectuate such a result is in its entirety the creation of the statute; it does not otherwise exist."

■ The General Assembly and the courts have recognized that both by law and by nature, parents have their primary right as against the world to their children. It is an inherent natural right. The legislature did not intend by statute to provide that the relationship of parent and child might be lightly cast aside for any paternalistic sociological theory. Rather, § 453.-040(4) sets out only grave and compelling grounds for the action:

"A parent who has for a period of at least one year immediately prior to the filing of the petition for adoption, either willfully abandoned the child or willfully neglected to provide him with proper care and maintenance."

■ Abandonment is a matter of intent, and conduct either before or after the statutory period may be considered to determine the purpose and intent of the parent. *In re Adoption of K,* supra, 417 S.W.2d at 709[13]; *In re Adoption of J,* supra, 396 S.W.2d at 261–262[5–7]. Appellant's actual intent in this regard is best gleaned from the actual trial testimony.

Florence Vaughn, a friend of appellant's, stated that appellant told her that she intended to give the children to her ex-husband for a sum of money. Significantly, at the time the modification of the custody order occurred, appellant received $600. Likewise, appellant told Vaughn that "Al

[her boyfriend] meant everything to her; her children meant nothing."

Martha Louise McGee, who for a period of time permitted appellant and her children to live with her, testified that she heard appellant say to her former husband: "If you give me enough money to pay my bills off, the bills that you left with me when we divorced . . . then I'll give you the damn kids."

From October 1969, when the children were placed in the actual custody of respondents, until their father's death in May 1971 appellant made no effort to regain custody of the children but was quite content to discharge her obligation as a mother by a sporadic visit during the Christmas holidays. These visits were primarily as a result of the children being at the appellant's grandparents' home and were not visits initiated by appellant. The responsibility for the rearing of these two children, ages 6 and 5 in 1969, fell squarely and completely upon respondents. At the time these children started school, a time of emotional adjustment for many youngsters, it was the respondents and not appellant who provided the understanding and security so often necessary for a healthy adjustment in school.

As noted in *In re Adoption of K,* supra, 417 S.W.2d at 711[14], in discussing willful abandonment, "The terms must be and are somewhat elastic, and the question whether there has been a willful abandonment or neglect in any given case is essentially a factual question."

While the record discloses that after her former husband's death appellant sought to regain custody of the children, it is significant that appellant was fully aware that her former husband, while holding "legal custody", did not have actual custody. Her action in seeking to regain custody would have been more believable if her former husband had in fact had the actual custody. It is difficult to escape the conclusion that appellant's conduct in seeking to modify the divorce decree or to obtain a writ of habeas corpus was in fact an attempt to thwart respondents in their efforts to adopt these children. Appellant displayed no interest whatsoever in these children until the death of their father. While living either in the Springfield or St. Louis area she made little or no effort to visit with them or to even communicate by letter, and the infrequent visits were principally the result of action by others.

In our judgment the appellant has wilfully abandoned the children within the meaning of § 453.040(4), and her consent of these adoptions is not required. Therefore the adoption decrees in both cases are affirmed.

All concur.