118 S.W.3d 317 (2003)
In the Matter of K.N.H.
R.A.M. and C.M., Respondents,
v.
C.A.M., Appellant.
No. 25259.
Missouri Court of Appeals, Southern District, Division One.
October 30, 2003.
*318 Christina L. Kime, Hackworth, Kime & Hackworth, Piedmont, for appellant.
Charles T. Rouse, Salem, for respondent.
ROBERT S. BARNEY, Presiding Judge.
The trial court entered a judgment and decree of adoption by which K.N.H. was adopted by R.A.M. and C.M. ("Respondents"). The natural father, C.A.M. ("Appellant"), appeals claiming that the trial court erred because Appellant did not consent to the adoption and the evidence was insufficient to establish that he had willfully abandoned and/or neglected K.N.H. for six months immediately preceding the filing of the adoption petition. Appellant *319 further challenges the validity of the adoption decree, arguing that Respondents did not have "lawful custody" of the child for six months before the decree as required by section 453.080.1 and without which the adoption could not be ordered.[1] We affirm.
In an adoption case, as in other court-tried cases, appellate review is governed by Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). Therefore, we must sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. H.W.S. v. C.T., 827 S.W.2d 237, 240 (Mo.App.1992). Deference is given to the trial court's determinations of witness credibility. In re K.K.J., 984 S.W.2d 548, 552 (Mo.App.1999). In determining if substantial evidence exists to support the judgment, we defer to the trial court on factual issues and do not substitute our judgment for that of the trial court. Id. "Greater deference is granted to a trial court's determination in custody and adoption proceedings than in other cases." Id. "We review the facts and all reasonable inferences therefrom in the light most favorable to the trial court's judgment." In re C.J.G., 75 S.W.3d 794, 797 (Mo.App.2002).
Respondents act as foster parents for the state of Missouri. Appellant, born July 17, 1975, was a foster child in Respondents' home from June 1988 to September 1993. S.H. ("Mother"), born October 14, 1973, was also a foster child in Respondents' home and, aside from a two-year time period, has lived in the home or on Respondents' property since 1989.
Appellant testified that he and Mother had been engaged in a sexual relationship for two years and the relationship ended approximately four months before he left Respondents' home in 1993. Appellant further stated that at that time, he believed he and Mother were involved in a monogamous relationship. Appellant left Respondents' home prior to the birth of K.N.H. and, according to him, without knowledge Mother was pregnant.
K.N.H. was born January 22, 1994. At some point after K.N.H. was born, Appellant visited Respondents and saw K.N.H. According to Respondents, the visit occurred when K.N.H. was approximately four days old. Appellant testified he thought K.N.H. was closer to six months old. At this juncture, the only possible father of the minor that Mother had named was Daniel DeClue ("DeClue").
Respondents and witnesses for Respondents also testified to other occasions throughout K.N.H.'s life that Appellant returned to the house and saw K.N.H. Appellant denied he made other visits.
On March 3, 1994, Respondents filed for guardianship of K.N.H. See § 475.010, et seq. DeClue, the person named by Mother as the father, was served notice of the proceeding. Letters of guardianship were issued April 8, 1994. Seasonably a paternity test was performed, and DeClue was eliminated as a possible father of K.N.H.
When K.N.H. was approximately eighteen months old Mother identified Appellant and another individual as a possible father of K.N.H. Respondent C.M. and another witness testified that C.M. approached Appellant at his workplace to ask about his possible paternity of K.N.H. Respondent C.M. testified that she did not remember the exact date the conversation occurred, but that she had "thought hard on it for a while" before approaching Appellant. According to Respondent C.M., Appellant denied ever having engaged in a *320 sexual relationship with Mother and denied that K.N.H. could have been his child. Respondents' witness also testified that Appellant vehemently denied the possibility of his being the father of K.M.H. Respondents decided not to pursue the matter further, because Appellant was going to school and leaving for the military shortly after the encounter.
Respondents filed a petition for adoption on January 13, 2000. The original petition identified DeClue and Appellant as possible fathers, but stated that DeClue had been eliminated as a potential father. Respondents testified they did not know Appellant's location at that time so they served Appellant through publication. Appellant subsequently joined the proceeding as an intervenor and moved for a paternity blood test. The test results indicated a 99.98 percent likelihood Appellant was the father of K.N.H. On February 11, 2002, Appellant was granted temporary weekly visitation with K.N.H. and was ordered to pay $35.00 per week child support.
On February 13, 2002, Respondents filed a first amended petition for adoption, which included a third possible father named by Mother, and allegations that, prior to the filing of the action, none of the possible fathers had provided any support, necessities, parenting, care, affection, or emotional support for K.N.H. The amended petition further alleged that each of the possible fathers had abandoned K.N.H. These allegations were made pursuant to section 453.040, which provides, in pertinent part, that consent to the adoption of a child is not required of:
(7) A parent who has for a period of at least six months, for a child one year of age or older, ... immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection[.]
A hearing was held on June 24, 2002. The trial court found Appellant knew he was the probable father of K.N.H., knew of K.N.H.'s whereabouts and residency, and saw the child from time to time. The trial court further found that Appellant took no action to assert his paternity or to support the child monetarily or emotionally in any way from the child's birth on January 22, 1994, until after the present action was filed January 13, 2000.
The court's findings also set out that:
The Court further finds based on the evidence that [Appellant] willfully abandoned the minor child and neglected the minor child without just cause or excuse as was shown by his failure to promptly assert his paternity, his denial of his paternity to [Respondent C.M.] and the lack of justification for his claimed belief that someone else might be the father. On the later [sic] issue the Court finds, based on all the evidence and specifically [Appellant's] own testimony that he was not justified in his claimed ignorance of this paternity because he knew he had frequent sexual intercourse with [Mother] at the probable time of conception, knew that [Respondents] were attempting to obtain paternity testing of a possible father, but did not disclose his possible paternity to them, did not inquire of the outcome of the paternity tests and later denied his possible paternity to [Respondent C.M.]
The court terminated the parental rights of Appellant and Mother and approved Respondents' adoption of K.N.H. This appeal follows.
Appellant first contends the court's findings of abandonment and neglect were not supported by clear, cogent, and convincing *321 evidence, because Mother concealed his parentage from him and limited his access to the child, and as a result, Appellant did not have the willful intent to either abandon or neglect the child.
"The terms `neglect' and `abandonment' embody different, but not mutually exclusive concepts." I.D. v. B.C.D., 12 S.W.3d 375, 377 (Mo.App.2000).
"Abandonment" is "the voluntary and intentional relinquishment of custody of the child with the intent to never again claim the rights or duties of a parent, or, the intentional withholding by the parent of his or her care, love, protection and presence, without just cause or excuse." Id. at 378.
"Neglect" centers on physical deprivation or harm and has been defined as a "`failure to perform the duty with which the parent is charged by the law and by conscience.'" In re Marriage of A.S.A., 931 S.W.2d 218, 222 (Mo.App.1996) (quoting In re C., 380 S.W.2d 510, 515 (Mo.App. 1964)). Thus, "neglect" is ultimately "a question of an intent to forego parental duties, `which generally is an inferred fact, determined by conduct within the statutory period, combined with relevant conduct both before and after the period.'" Matter of B.S.R., 965 S.W.2d 444, 449 (Mo.App. 1998) (quoting C.B.L. v. K.E.L., 937 S.W.2d 734, 737 (Mo.App.1996)). "The greatest weight is given to conduct within the statutory period, and the least weight is given to conduct after the petition for adoption is filed." I.D., 12 S.W.3d at 377. "Parental duties" include "both an obligation to provide financial support for a minor child, as well as an obligation to maintain meaningful contact with the child." Id. "A parent's failure to contribute to the financial support of a child coupled with other evidence as to lack of contact with it is sufficient to sustain a trial court's finding of willful neglect." Id. at 377-78.
"The terms `abandonment' and `neglect' in § 453.040(5) are used in the disjunctive and, therefore, either ground, if supported by substantial evidence, will support an adoption." Id. at 377 (emphasis added); see A.S.A., 931 S.W.2d at 221.
The record shows, in light of Appellant's own testimony, that he knew he had a sexual relationship with Mother during the time conception occurred and believed that their relationship was monogamous. Thus, Appellant's belief that someone else was the father of K.N.H. was not justified. Underlining this conclusion is Respondent C.M.'s testimony and that of another witness that Respondent C.M. had informed Appellant in 1996 that the test results indicated DeClue was not the father. As previously set out, when Appellant received this information, Appellant denied that he was the father of K.N.H., and, indeed, denied ever engaging in any sexual relationship with Mother. While Appellant denies this conversation occurred, the trial court was at liberty to accord more credibility to the testimony of C.M. and that of another witness, and we defer to the trial court's determination in this matter. K.K.J., 984 S.W.2d at 552.
Appellant directs this Court to actions taken by him after the petition for adoption was filed. He sets out that he retained counsel, joined the proceeding as an intervenor, sought a paternity test, and requested and attended weekly visitation. Appellant argues these actions prove that, once he was made aware he was the father of K.N.H., he did not fail to perform the duty with which he was charged by the law and by conscience; nor did he voluntarily and intentionally relinquish custody of the child with the intent to never again claim the rights or duties of a parent.
While we note Appellant did take these actions after the filing of the petition for *322 adoption, we accord more weight to Appellant's actions during the time period prior to the filing of the petition for adoption. See parallel discussion in I.D., 12 S.W.3d at 378.
According to his own testimony, Appellant did not support the child in any way until he was ordered to do so on February 11, 2002. Nor did he attempt to perform any parental duties prior to Respondents' filing of their petition for adoption. Based on the foregoing, in conjunction with the factual circumstances previously related, we determine there was clear, cogent, and convincing evidence to support the trial court's determination that Appellant abandoned K.N.H. for a period of six months prior to the filing of the petition for adoption. Id. at 377-78; § 453.040(7). Point denied.
In his last point, Appellant contends Respondents did not have "legal custody" of K.N.H. for the requisite six months prior to the filing of the petition for adoption, because he was not given notice of the guardianship proceeding, and, therefore, the adoption proceeding was void. See § 453.080.1.
"[T]he Missouri version of the Uniform Child Custody Jurisdiction Act applies to `appointment of a guardian of the person.' " In re Estate of Patterson, 652 S.W.2d 252, 254 (Mo.App.1983) (quoting § 452.445.2 RSMo 1978).
As referred to in section 453.080.1(5), section 452.455(2) also provides, in pertinent part, that "any parent whose parental rights have not been previously terminated... must be served in the manner provided by the rules of civil procedure and applicable court rules...."
When the guardianship proceeding was initiated on or about March 3, 1994, K.N.H. was less than two months old. Up to that time Mother had only named DeClue as a possible father of K.N.H., and Respondents served DeClue as required by the statute. At this juncture, the record shows that Respondents had no knowledge of Appellant's possible paternity and, therefore, had no indication service on Appellant was necessary. See parallel discussion in State ex rel. T.A.B. v. Corrigan, 600 S.W.2d 87, 92 (Mo.App.1980).
After Respondents ascertained DeClue was not the father of K.N.H. and Mother identified Appellant as a possible father, Respondent C.M. approached Appellant, and he denied his possible paternity. In contrast, we note that from the outset, the father in Patterson was listed on the birth certificate as the father of each of the minors, contributed to the support of the children, and was treated as the father by the mother and the petitioners. Patterson, 652 S.W.2d at 256. Accordingly, he was entitled to notice because he was known as a possible father. Id., at 256-57.
Unlike the petitioners in Patterson, however, Respondents testified they did not know who K.N.H.'s father was at the time they applied for guardianship papers. Nor did any individual, at that juncture, come forward and assert his paternity of K.N.H. Based on the foregoing, we conclude Respondents did have lawful custody of K.N.H. for a period of nearly six years prior to the filing of the petition sufficient to satisfy the requirement of § 453.080.1; see In re Adoption of Fuller, 544 S.W.2d 345, 349 (Mo.App.1976); In re Adoption of K., 417 S.W.2d 702, 708 (Mo.App.1967). Point Two is denied.
The judgment and decree of adoption is affirmed.
PREWITT, J. and GARRISON, J., concur.
NOTES
[1] All statutory references are to RSMo 2000, unless otherwise specified.